SOUTHERN REALTY CO. *v.* TCHULA COOPERATIVE STORES.

[75 South. 121, In Banc.]

1. CORPORATIONS. *Power to own lands.* *Questioning collaterally.*
   The rule that the power of a corporation to own land at all or in excess of the land prescribed by its charter, cannot be questioned collaterally, but only in a direct proceeding instituted by the state for that purpose, has no application where the corporation is seeking the aid of a court of justice to enable it to acquire lands which it has no power to acquire and hold, in such case the principle is that a court of justice will not aid a corporation to do that which is impliedly forbidden by its charter or by law.

2. CONSTITUTIONAL LAW. *Obligation of contracts. Corporate charter. Statute.*

The grant by the state to a corporation of power to acquire and enjoy real estate, without limit as to value and quality, is a contract within the meaning of section 16 of our state Constitution and article 1, section 10, of the Constitution of the United States, prohibiting laws impairing the obligation of contracts, and could no be withdrawn by Laws 1912, chapter 162, prohibiting corporations from acquiring agricultural lands in Mississippi.

3. CONSTITUTIONAL LAW. *Police power.*

A corporation empowered by its charter to acquire and enjoy realty without limit as to value and quantity cannot be affected by Laws 1912, chapter 162, on the ground that the state, under its police power and to prevent the monopolization of agricultural land, can withdraw from a corporation power previously granted it to acquire such land, since to allow this would be violative of Constitution 1890, section 16, and Constitution, United States, article 1, section 10, prohibiting laws impairing the obligation of contracts.

APPEAL from the chancery court of Holmes county.
HON. J. F. McCOOL, Chancellor.

Suit by Tchula Co-operative Stores against the Southern Realty Company. From a decree overruling a demurrer to the bill, defendant appeals.

The appellee is a corporation organized and existing under and by virtue of a charter granted to it by the state of Mississippi, on the 3rd day of November, 1888. By the express provisions of its charter, it had the right granted to it of perpetual succession, and was expressly empowered to have, hold, purchase, acquire, and enjoy real and personal estate in fee simple, or otherwise, as it might deem proper. The corporation is also authorized to lease and operate lands, do a general mercantile business, and to take securities of all sorts to guarantee the payment of debts owing to it. It was further given the general powers conferred upon corporations by the provisions of sections 1027, 1028, 1031, and 1032 of the Mississippi Code of 1880, and of chapter 26 of the Laws of 1882, and of chapter 86 of the Laws of 1884. The charter was granted under the provisions of the sections

of the Code above mentioned, as amended by the session laws above stated of 1882 and 1884. After the granting of the charter, the corporation organized and began business, and thereafter acquired considerable land and other estate and property of various kinds.

It owns lands adjoining a tract of eighty acres of land, which is the property of appellant, which lands are all situate in Holmes county, Miss., and on March 3, 1914, entered into a contract whereby it agreed to purchase the said lands from the appellant, and whereby the said appellant agreed and undertook to sell and convey the said lands to the appellee, upon terms therein mentioned, and for a valuable consideration which passed between the parties, upon the approval of the title of the appellee, and thereupon the appellee tendered performance of the contract on its part, and demanded a conveyance of the lands to it by the appellant. The appellant refused to execute a conveyance of the property to the appellee, because of its expressed contention that the appellee was prohibited from acquiring, and the appellant was prohibited from conveying to the appellee, the lands above mentioned, because they were agricultural lands, and a conveyance thereof to appellee in pursuance of the agreement mentioned would be in violation of chapter 162 of the Laws of 1912, which undertook to prevent corporations from acquiring agricultural lands in Mississippi.

Appellee filed a bill in chancery setting out the above facts and praying that appellant be compelled to carry out its contract of sale. It is the contention of appellee that chapter 162 of the Laws of 1912, prohibiting corporations from acquiring title, in fee or for a term of years, to, or owning lands for agricultural purposes, has no application to the charter granted appellee since said charter was granted before the Constitution of 1890, section 178, which contains a provision that:

"The legislature shall have power to alter, amend, or repeal any charter of incorporation now existing and revocable, and any that may hereafter be created,

whenever in its opinion it may be for the public interest to do so.''

Appellee contends that the said act of 1912 if applicable would defeat appellee in the full enjoyment of its property and rights and prevent it from enjoying the privileges, immunities, and franchises and property rights conferred upon it, acquired by it, and vested in it by virtue of its charter, and the attempted application of said act would be in violation of section 10, article 1, of the Constitution of the United States, as a law impairing the obligations of the state's contract with appellee.

The appellant demurrer to the bill, and from a decree overruling the demurrer this appeal is prosecuted.

*George H. Ethridge,* assistant attorney general, for the State.

To the contentions of the complainant, the appellee here, I contend that the charter claimed does not constitute a contract within the meaning of the Federal and state Constitutions, forbidding the states to impair the obligation of a contract:

(1) In the first place I contend that by section 17 of article 12 of the Constitution of 1869, the legislature reserved the full power of legislation over all corporations whatever. Said section reads as follows:

"Sec. 17. Liabilities of banks, associations, and other corporations, shall be secured by legislative enactments; but in all cases, no stockholder shall be individually liable over and above the stock by him or her owned, unless so specified in the articles of association, or act of incorporation." If mistaken in this, I contend.

(2) That inasmuch as the land was not acquired prior to 1890, it is not a vested right and became subject to section 84 of the Constitution of 1890, specifically authorizing the legislature to limit and restrict power of corporations to acquire or hold lands in this state.

(3) I contend that this charter contains the power of doing a banking business and is therefore affected with the public use and subject in all respects to the police power of the state.

(4) I contend that as the Acts of 1912, chapter 162, was an exercise of the police power of the state to prevent and suppress monopolies in land and in all respects the police power of the state was adequate to enact chapter 162, regardless of the contract clause of the Constitution.

(5) That the bill seeks specific performance of the contract as to a matter clearly contrary to the general public policy of the state, and that equity will not enforce such contracts regardless of whether it is legal or not, but will leave them where they found them.

(6) I contend that charter does not warrant the contention of the complainant but is to be construed more strongly against the complainant and that the power to acquire real estate is a mere license granted by general law and subject to be modified and restricted by the legislature at will. 3 Words and Phrases (N. S.), page 98; *Equitable Life Ins. Society* v. *Brown,* 213 U. S. 25, 29 Sup. Ct. Rep. 404, 53 L. Ed. 682.

On all questions of the construction of the meaning of state statutes and state Constitutions the Federal courts are bound by the decisions of the states' supreme courts, and with such interpretation placed on the statute the court will then decide whether or not the statute or Constitution as construed by the state court makes an irreparable contract or not. The Federal court must follow the adjudications of the state upon the question as to whether a particular law of the state has been passed in such manner as to become a valid law under the state Constitution. *Peters* v. *Gilchrist,* 722 U. S. 483, 32 S. Ct. 122, 56 L. Ed. 278; *G. W. H. Banks* v. *Armstrong,* 208 U. S. 481, 28 S. Ct. 372, 52 L. Ed. 582; *Hunter* v. *Pitts,* 207 U. S. 161, 28 S. Ct. 40, 52 L. Ed. 151; *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 31 S. Ct. 337,

55 L. Ed. 367; *Virginia Carolina Chemical Co.* v. *Kirven,* 215 U. S. 252, 30 S. Ct. Rep. 78, 54 L. Ed. 179; *Brown Foreman Co.* v. *Ky.,* 217 U. S. 563, 30 S. Ct. 578, 58 L. Ed. 883. See note to *Share & Trieste Co.* v. *Friedman,* 40 L. R. A. (N. S.) 393, et seq., title "Constitutional and Statutory Questions." See, also, *Forepaugh* v. *Delaware, etc., R. Co.,* 5 L. R. A. 509, Headmark 5 which reads as follows:

"The law declared by the state courts to govern contracts made within their jurisdiction is conclusive everywhere and the valid or binding effect of such contracts cannot be affected by any so called 'Commercial Law.'" See, also, case, note and authorities cited therein under heading "U. S. Supreme Court Follows Decision of State Court.'

## SECOND PROPOSITION.

Inasmuch as the land involved in this suit was not acquired prior to the adoption of the Constitution of 1890, it has not a vested right and becomes subject to section 84 of the Constitution of 1890, specially authorizing the legislature to limit or restrict the power of corporations to acquire or hold lands in this state. *Penn R. R. Co.* v. *Miller,* 132 U. S. 75, 33 L. Ed. 267; *Providence Bank* v. *Billings,* 29 U. S. (4 Pet.) 514 (7; 939); *Charles River Bridge* v. *Warren Bridge,* 36 U. S. 11, Pet. 420, 733; *Christ Church* v. *Philadelphia County,* 65 U. S., 24 How. 300 (16; 602 ; *Gilman* v. *Sheyboyan,* 67 U. S., 2 Black, 510 (17; 305); *Tucker* v. *Ferguson,* 89 U. S., 22 Wall. 527 (22; 805); *Northwestern Fertilizing Co.* v. *Hyde Park,* 97 U. S. 659 (24; 1036); *Newman* v. *Mahoning County,* 100 U. S. 548, 561 (25; 710, 719); 2 Hare Am. Const. Law, 661, 663, 664. See, also, *Memphis City Bank* v.*Tenn.,* 161 U. S. 186; Cooke on Corporations, section 494, and *Pearsall* v. *Great Northern Railroad Company,* 161 U. S. 646, 4 L. Ed. 838; *Stone et al.* v. *Farmers*

*Loan, etc., Co.,* 29 U. S, (L. Ed.) 636; *Stone et al. R. R. Commission* v. *N. J. & C. R. R. Co.,* 67 Miss. 646.

Section 190 of the state Constitution establishes a rule of construction which requires the court to construe such charters in such manner as to retain power for legislature to promote the general welfare. The concluding clause of said section provides that: "The exercise of the police power of the state shall never be abridged or so construed as to permit corporations to conduct their business in such manner as to infringe upon the rights of individuals or the general well being of the state. This rule was a rule of construction independent of the Constitution and has existed throughout the history of the state and it has always been considered that a grant of charter rights could not contest with or destroy the police power of the state but that such power remained unimpaired by any grant or contract made by the legislature. *St. Louis, etc., R. R. Co.* v. *Mathews,* 165 U. S. 1, 44 L. Ed. 611, affirming 121 Mo. 298, 25 L. R. A. 161; *Gas Light Co.* v. *Drainage Commission,* 197 U. S. 453, 49 L. Ed. 831; *Shreveport, etc., Co.* v. *Shreveport,* 47 So. 40, 129 Am. St. Rep. 345, 41 L. R. A. 481; *Alcorn* v. *Hamer,* 38 Miss. 625; *Montrose* v. *State,* 61 Miss. 429; *Collins* v. *Sherman,* 2 George (Miss.) 679.

## THIRD PROPOSITION.

On page 13 of the record the following power is conferred by the charter: "They are hereby authorized to do a banking business in said town of Tchula and to have such powers as usually pertain to such business and said company shall have, possess, and enjoy all the powers, rights and privileges created or conferred in chapter 38 of the Code of 1880 and amendments thereto."

This is one of the several provisions of the same charter and it is clear, under the authorities, that the police power of the state is available to limit and restrict the rights of all such charters affected by such use in all

reasonable ways necessary for the public good. *Noble State Bank* v. *Haskell, et al.,* 219 U. S. 104, 55 L. Ed. 112; *Canfield* v. *U. S.,* 167 U. S. 518; *Shallenburger* v. *First State Bank of Halstein,* 219 U. S. 114; *Assaria State Bank of Assaria* v. *Joseph N. Dalley,* 55 U. S. (L. Ed.) 123; *Engle* v. *Edward R. O'Malley,* 44 L. Ed. (U. S.) 128, and note; See, also, *Bank of Oxford* v. *J. S. Love et al.,* 72 So. 133; *Railroad Commission* v. *Farmers Loan and Trust Company,* 116 U. S. 307, 29 L. Ed. 645; *Lake Shore & Mich. Cent. R. R. Co.* v. *Ohio,* 173 U. S. 285, 43 L. Ed. 702.

### FOURTH PROPOSITION.

I next earnestly contend that chapter 162 of the Law of 1912, was an exercise of the police power of the state designed to prevent and suppress monopolies of the farm lands of the state and that it is undoubtedly within the power of the state to limit the holdings of both corporations and individuals so as to give each person within the government the right to some portion of the earth or that part of it within the state limits.

Looking down the future years, counting centuries by the hundreds and thousands, it is difficult to conceive of the exigencies that may arise and for this reason the court should deny the claim of exemption where there is a charter in perpetuity where it can possibly be done.

### FIFTH PROPOSITION.

The bill in this case seeks the aid of the court of chancery to compel a conveyance in contravention of the general public policy of the law. The right to specific performance is not an absolute right but is a discretionary power of the court of equity which may be refused even though the act in itself may be lawful. If an act is contrary to the public welfare or the public policy or contrary to the principles of the statutes of the state the

court of equity will not lend it aid in enforcing a con-
tract even though the contract may be inforceable in the
court of law or may be lawful in itself. In such case
equity will leave the partes where it finds them. See
Folls Appeal, 91 Pa. 434, 36 Am. Rep. 671; *Rigg v.
Reading & S. W. C. R. Co.,* 191 Pa. 298, 43 Atl. 212;
*Guernsay v. Cook,* 120 Mass. 501; *Rayan* v. *McLain,* 50
L. R. A. 501, 42 Barber (N. Y.) 169; Pomroys Acts on
Jurisprudence, sec. 940, 36 Cyc. 620; *Ryan* v. *McLain,*
91 Md. 175, 80 Am. St. 438; *Ashton* v. *Robinson,* 49 Miss.
348; *Daniel* v. *Frazier,* 40 Miss. 507; *Clement* v. *Reed,*
9 S. & M. 538, 44 Cent. Dig. title; "Specific Perform-
ance" sec. 18; *Volney* v. *Nixon,* 68 N. J. Eq. 605, 60
Atl. 189; *Brien* v. *Williamson,* 7 How. (Miss.) 14; *Odi-
neal* v. *Barny,* 2 Cushman, 9; *Hoover* v. *Pierce,* 4 Cush-
man, 627; *Bank* v. *Stegall,* 41 Miss. 142; *Parker* v. *Jus-
tice,* 41 Miss. 240.

## SIXTH PROPOSITION.

I contend that a proper construction of the charter
does not warrant the contention of appellant that he has a
contract right to hold property to an unlimited amount
and to an unlimited value but so far as its charter pow-
er on this proposition is concerned it was a naked power
to hold and acquire in the nature of a license from the
state, revokable at will and the discretion of the legisla-
ture. *Smiley* v. *Kansas,* 169 U. S. 447, 25 Ct. 289, 49
L. Ed. 546; *Northern Securities Co.* v. *U. S.,* 193 U. S.
197, 24 S. Ct. 25; *Aikens* v. *Wos,* 195 U. S. 194, 25 S. Ct.
3, 28 L. Ed. 154; *Stone* v. *Miss.,* 101 U. S. 14, 25 L. Ed.
1079; *Boston Beer Co.* v. *Mass.,* 97 U. S. 25, 24 L. Ed.
989; *Hunt* v. *Hunt,* 131 U. S. 114, L. Ed. 1109.

The inhibition of the provisions only apply to con-
tracts made that are in existence when the law is passed.
The states may legislate as to contracts thereafter made
as they see fit. *Denny* v. *Bennett,* 128 U. S. 489, 9 S. Ct.
134, 32 L. Ed. 490; *Brown* v. *Smart,* 125 U. S. 454, 12

S. Ct. 958, 36 L. Ed. 773; *Elton* v. *O'Conner,* 32 L. R. A. 532; *Bank* v. *Shrank,* 39 L. R. A. 578; *Peninsular, etc.* v. *Union, etc., Co.,* 42 L. R. A. 333, 69 Am. St. Rep. 934.

I respectfully and earnestly insist that the decree of the court below should be reversed and the bill dismissed.

*Cutrer & Johnston,* for appellee.

This appeal presents in a very well defined and clear-cut manner the single question as to whether or not the legislature of the state of Mississippi, has a right to pass legislation which will trench upon and deny to a corporation of the state, the full and unrestricted enjoyment of its property rights, privileges, immunities and franchises, or whether or not this court will condemn an act of the legislature, the direct effect and operation of which when applied to the facts raised by this record, would be to deny to the appellee the rights guaranteed to it by the Constitution of the state of Mississippi, as well as, by the constitution of the United States.

The question that presents itself upon the threshold, is, was the granting of the charter by the state to the appellee a contract between the state and the appellee.

There would seem to be no doubt upon this proposition. The state granted the charter to the appellee in the manner provided by law. The appellee accepted the charter, acted upon it in good faith, and by virtue thereof, entered upon business enterprises which involved the investment and expenditure of large sums of money. Under such circumstances, the rule laid down by the supreme court of the United States in the case of *Dartmouth College* v. *Woodward,* 4 Wheaton 657, is directly applicable.

In the case of *Stone* v. *Y. & M. V. R. R. Co.,* 62 Miss. 607, the court commented upon the rule announced, in various parts of the opinion delivered in the decision of that case. For instance:

"The right of the corporators ·to exercise the powers conferred by the act of incorporation and to rest secure on its provisions, has hitherto been generally regarded as indisputable. If anything is or can ever be settled in American constitutional law, the sanctity and inviolability of a contract between a state and individuals in the shape of a charter for a business enterprice, accepted and acted on by the corporators, on the faith of its terms and provisions, must be so regarded. That is the contract. These terms were expressly made. On the faith of them, capital was invested and the enterprise set on foot. It is not allowable now, for one of the contracting parties to interfere with the exercise, by the other, of its plainly granted rights. They are secured beyond the reach of the legislature and cannot be impaired."

It is not necessary to multiply decisions upon this very vital point. It seems clear that if the charter of the appellee was granted as contended for by appellee, then the rights of appellee cannot be assailed in any way, and its valuable franchise in the way of rights to acquire and hold real estate of all kinds, cannot be taken away from it at the whim or caprice of the legislature.

It has been decided by this court that the charter granted to the appellee, was irrepealable and could not be amended in any of its essential parts, without the consent of the appellee.

This court, in the case of *Columbus Insurance & Banking Co.* v. *First National Bank,* 73 Miss. 103, held that unless the right to amend or repeal a charter was reserved in the act under which the corporation was created, the legislature could not repeal or amend the act of incorporation or the charter. In that case the charter was granted in 1867, while article 5 of section 2 of chapter 35, page 292, of the Code of 1857 was in effect. That law was held by the supreme court to be read into all charters granted by general law, or by special act

of the legislature, because of the following language of·
the Code of 1857, to wit: "And all charters granted
under this act or by act of the legislature, may be re-
pealed by the legislature."

According to the very terms of that law, the court
held that the charter of the Columbus Insurance &
Banking Company was subject to amendment, and that
the amendment considered by the court in that case,
operated *pro tanto,* to alter the charter of the corpora-
tion.

In the present case, the charter was granted by the
state under the provisions of chapter 38 of the Code of
1880. The first section of that chapter, section 1027, pro-
vided for the creation of corporations of the character
of appellee, and with respect to the charters granted
such corporations, the section expressly provided that
the charter so granted, "shall be as valid in all respects,
as if such corporations had been severally created by
the legislative enactment."

Section 1028 provided the machinery for the securing
of the grant of the charter, and thereupon after the
grant of the charter, it expressly provided "that the
powers therein specified, shall by the approval of the
charter, be vested in such corporation, and it shall go
into operation at the time and on the terms and con-
ditions specified."

Section 1031 provided for the perpetual succession of
the corporation, and conferred upon the corporation
full power "to contract and be contracted with, with-
in the limitations of their corporate powers."

The Laws of 1882, page 50, conferred upon corpora-
tions created under chapter 38, additional powers, priv-
ileges and immunities over and above those granted
by the terms of chapter 38 among such additional pow-
ers, privileges and immunities so granted; being the
right to increase the capital stock to an unlimited
amount, and to "hold and own real and personal prop-
erty to any amount."

The Act of 1884, page 90, limited the manner in which the amendments to the charter of such corporations could be made, and expressly limited the power to make such amendments only after the approval thereof by majority of the stockholders of the corporation.

It will thus be seen that the charter of incorporation of this appellee, was granted by the express terms of the Law of 1880, as though it had been enacted into a contract in the form of a special legislative enactment, and that no power was reserved to the state, by legislative action, or otherwise, to amend or alter any charter so granted, except upon the express affirmative assent and concurrence of a majority of the stockholders. This puts the appellee in the attitude of owning a valuable corporated franchise which gives it the right to acquire and own, and at pleasure to use and dispose of all lands of every character without limitation as to amount, and especially lands which are adapted to the purposes of its corporate business and existence. This being true, the charter of the appellee is a contract which is inviolable and which cannot be taken away from it by any mere legislative enactment.

It is not worth while to discuss the question as to whether, or not, if the Act of 1912 is sought to be applied to the charter of appellee, so as to prohibit it from acquiring the lands in controversy in this case, such application would be violative of the rights guaranteed to the appellee by the provisions both of the state and of the federal Constitutions.

The questions under discussion in the Dartmouth College case, where the applicability of the constitutional provisions involved to a private corporation, as is the corporation here, although there they related primarily to the internal management of the affairs of the corporation, while in this case, valuable money rights are directly involved.

114 Miss.—21

Rose's notes on the particular case contained such an elaborate discussion of the proposition which is now before the court, reference thereto is all that is needed. These notes will be found in volume 4 of the Extra Annotated, 2 Edition, of the Lawyers Edition of the United States Supreme Court reports, and in Volume 1, page 909, of Rose's notes on United States Supreme Court reports.

It is not necessary to attack the general validity of the Law of 1912, in order to sustain the contention of appellee in this case. That act may be applicable to corporations, the charters of which were granted and with respect to which the state expressly reserved the right to alter, amend or repeal them, or to charters granted after the passage of the law, but as to the charter of appellee, it is simply not operative because to apply the law to the charter of the appellee, would be to deprive it of its property without due process of law, to deprive it of the equal protection of the law, and to impair the obligations of a contract existing in its favor, by the very terms of its charter of incorporation.

It is, therefore, respectfully submitted, that the decree of the court below should be affirmed.

Smith, C. J., delivered the opinion of the court.

Two questions are presented to us by this record: (1) Has chapter 162, Laws 1912, amended appellee's charter so as to make it unlawful for it to acquire the land here in controversy? (2) Can this question be raised by appellant?

Taking these questions up in their inverse order, we will say: First, the rule that the power of a corporation to own land at all, or in excess of the land prescribed by its charter, cannot be questioned collaterally, but only in a direct proceeding instituted by the state for that purpose, has no application "where the corporation is seeking the aid of a court of justice to

enable it to acquire lands which it has no power to acquire and hold. Here the principal is that a court of justice will not aid a corporation to do that which is impliedly forbidden by its charter or by the law." 10 Cyc. 1135; 3 Thompson on Corporations (2d. Ed.) section 2393; *Case* v. *Kelly*, 133 U. S. 21, Sup. Ct. 216, 33 L. Ed. 513. Second, the grant by the state to appellee of power to acquire and enjoy real estate, without limit as to value and quantity, is a contract within the meaning of section 16 of our state Constitution, and article 1, section 10, of the Constitution of the United States, and cannot now be withdrawn, no right so to do having been reserved when the grant was made. *Dartmouth College* v. *Woodward*, 4 Wheat, 518, 4 L. Ed. 629. "The state must observe good faith as well as individuals, and she can no more withdraw what she has granted than can an individual, unless she has reserved the power to do so." *Payne* v. *Baldwin*, 3 Smedes & M. 661.

But it is said that this rule has no application here, for the reason that the state, under its police power, and "for the purpose of preventing the monopolization of agricultural land," can withdraw from corporations power heretofore granted them of acquiring such land, although the right so to do was not reserved when their charters were granted. Conceding, for the sake of the argument, that the state has the power to prevent appellee from monopolizing agricultural land, it is not necessary, in order to accomplish such a purpose, to withdraw from it all power to acquire any such land. We are of the opinion, therefore, that chapter 162, Laws 1912, has no effect on appellee's charter.

Affirmed and remanded, with leave to appellant to answer within thirty days after filing of mandate in court below.

*Affirmed and remanded.*

ETHRIDGE, J., took no part in the decision of this case.