SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY *v.*
CITY OF MERIDIAN

No. 41885 June 12, 1961 131 So. 2d 666

*Butler, Snow, O'Mara, Stevens & Cannada, A. A. Kitchings, Jr.,* Jackson; *Floyd, Cameron & Deen,* Meridian; *John A. Boykin, Jr.,* Atlanta, Ga., for appellant.

*Ethridge, Minniece & Bourdeaux,* Meridian, for appellee.

686

ETHRIDGE, J.

This case deals with the application and validity of a charge or rent required by a 1956 Mississippi statute to be paid a municipality for the use by a telephone company of public streets. The principal question is whether the charge, as sought to be imposed by the City of Meridian upon Southern Bell Telephone and Telegraph Company (called Southern Bell), violates the contract clause (Sec. 16) of the Miss. Constitution of 1890, which states that "laws impairing the obligation of contracts shall not be passed." We hold that it does.

## I.

Miss. Laws 1956, Chapter 372, reorganized and expanded the authority of the Public Service Commission to regulate certain public utilities and their rates, including telephone companies. See Southern Bell Tel. & Tel. Company v. Miss. Public Service Commission, 237 Miss. 157, 113 So. 2d 622 (1959); Miss. Public Service Commission v. Home Telephone Co., Inc., 236 Miss. 444, 110 So. 2d 618 (1959); United Gas Corporation v. Miss. Public Service Commission, 127 So. 2d 404 (Miss. 1961). Section 5 of that Act contained provisions defining when a certificate of public convenience and necessity is required of a public utility.

Sec. 5 (e) is the statute in question. Although in some respects it is ambiguous, its manifest intention is to impose upon appellant, as a telephone utility, a charge or rent for the use of the streets, alleys and public places in a municipality. It provides that, in the case of a public utility rendering telephone service, ''the said utility shall pay two per cent (2%) of the monthly service charges in said municipality whether said utility has a franchise to operate therein or not.'' This is for the privilege to ''continue to use the streets, alleys and public places therein situated.''

This particular case developed under extended circumstances. After the statute was enacted, Southern Bell filed an action against the City of Meridian, in the U. S. District Court of the Southern District of Mississippi Eastern Division. Its purpose was to obtain a declaratory judgment as to whether Southern Bell and its predecessors had been granted by the State, under an 1886 statute, an irrevocable franchise to use the streets of the City for its poles and other facilities, and whether acceptance by Southern Bell of that statutory grant constituted a contract protected by Art. 1, Sec. 10, of the U. S. Constitution, which prohibits states from passing laws impairing the obligations of contracts. On the other

hand, the City contended in its answer and cross-bill, seeking to recover the charge laid by the act, that the 1886 statute did not create an irrevocable, perpetual right but only a revocable license.

The Company's contention is based upon Chap. 38, Miss. Laws 1886, whose title and Section 1 state: "AN ACT to encourage and facilitate the construction of Telegraph, Telephone and other like lines in the State of Mississippi.

"SECTION 1. BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF MISSISSIPPI, that any telegraph or telephone company, chartered or incorporated by the laws of this or any other State of the United States, shall, upon making due compensation, as hereinafter provided, have the right to construct, maintain and operate telegraph or telephone lines through any public lands of this State, and on, across and along all highways, streets and roads, and across and under any navigable waters, and on, along upon the right of way and structures, of any railroad, and, in case of necessity, on, under, or over any private lands in this State; provided, that the posts, arms, insulators and other fixtures of such telegraph or telephone lines be so erected, placed and maintained as not to obstruct or interfere with the ordinary use of such highways, railroads, streets or water, or with the convenience of any land owner, more than may be unavoidable."

The remaining thirteen sections of the 1886 law granted to telegraph and telephone companies the power to contract with owners of property for easements and the power of eminent domain. Chap. 38 was repealed by Miss. Code 1892. That act was omitted, probably by inadvertence, from the 1892 Code, which instead carried forward the provisions of the Code of 1880, Secs. 1065-1067, as Code 1892, Secs. 854-856, pertaining only to telegraph companies. Hence in A. & V. Ry. Company v. Cumberland Tel. & Tel. Co., 88 Miss. 438, 41 So. 258

(1906), it was held that the 1886 law was repealed and a telephone company could not condemn an easement along a railroad right of way. However, Sec. 4 of Code of 1892 preserved all rights previously accrued.

The federal district court held that the 1886 statute constituted an offer to grant telephone companies the right to an irrevocable, perpetual franchise to use the streets and public places in the state without charge, and acceptance of that offer by Southern Bell's predecessors and subsequently by Southern Bell vested it with an irrevocable franchise for those purposes, beyond the power of the legislature to change. The additional charge imposed by the 1956 act conflicted with the contract clause of the U. S. Constitution. Southern Bell Tel. & Tel. Company v. City of Meridian, 154 F. Supp. 736 (DC Miss., 1957). The district court stated the authorities are unanimous in holding that such a statute and its acceptance by a utility constitutes a binding contract, and to change its terms would be to impair the obligations of a contract. Citing a number of cases in support of its decision, the court further said the fact that appellant's predecessor, Cumberland Telephone & Telegraph Company, obtained from the city in 1899 a franchise and agreed to furnish the city a few free telephones did not estop it from asserting the franchise. The conduct of the company in taking advantage of general laws as to eminent domain and accepting benefits under Sec. 179 of Miss. Constitution of 1890 did not estop appellant. The court rejected application of the doctrines of laches, estoppel and adverse possession. It concluded the city was without power to impose the charge, and entered a declaratory judgment denying that right.

The U. S. Court of Appeals, 5th Circuit, affirmed the district court. City of Meridian v. Southern Bell Tel. & Tel. Co., 256 F. 2d 83 (CA 5th, 1958). It adopted substantially the opinion of the district judge. The court

of appeals further held the statement in Hodges v. Western Union Tel. Co., 72 Miss. 910, 18 So. 84 (1895), that the 1886 act is a permissive statute granting a mere revocable license, was dicta, and, if decisional, nevertheless the offer by the statute when accepted became a contract beyond the reach of impairment by either legislative or judicial action. That court noted that it was not deciding anything beyond that issue. "Particularly is it not intended to deal in any way here with questions relating to the exercise of the taxing and police powers of the state or city." The judgment of the district court was affirmed.

The City of Meridian appealed to the U. S. Supreme Court. City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U. S. 639, 79 S. Ct. 455, 3 L. Ed. 2d 562 (1959). That court applied the doctrine of abstention, which signifies that a federal court may either decline to exercise or postpone the exercise of its jurisdiction where a case involves a controlling question of state law. Annotations, Discretion of Federal Court to Remit Relevant State Issues to State Court in Which No Action Is Pending, 94 L. Ed. 879 (1950), 3 L. Ed. 2d 1827 (1959). It vacated the judgment of the Court of Appeals and directed the district court to hold the case pending an authoritative declaration of applicable state law on the issues, apparently whether the 1956 act imposed the charge and whether the 1886 act as accepted constituted an irrevocable franchise which could not be impaired under the contract clause of the Miss. Constitution, Sec. 16. The U. S. Supreme Court stated: ". . . we vacate the judgment of the Court of Appeals and remand the case to the District Court with directions to hold the cause while the parties repair to a state tribunal for an authoritative declaration of applicable state law.

"Proper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law be decided in the state tribunals preliminary to a fed-

eral court's consideration of the underlying federal constitutional questions. See Railroad Commission v. Pullman Company, 312 U. S. 496, 85 L. Ed. 971, 61 S. Ct. 643. That is especially desirable where the questions of state law are enmeshed with federal questions. . . . Here the state law problems are delicate ones, the resolution of which is not without substantial difficulty— certainly for a federal court. . . . In such a case, when the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider its validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessarily. . . .''

Thereafter the district court entered an order staying further proceedings ''while the parties repair to a tribunal of the State of Mississippi for an authoritative declaration of applicable state law. This court retains jurisdiction to hear any matters that might probably arise under the mandate of the Supreme Court and for final decision in accord with said opinion and mandate.''

The City of Meridian then filed in the Chancery Court of Lauderdale County, Mississippi, a bill of complaint constituting the present suit against Southern Bell. It alleged that defendant was maintaining its wires, poles and other facilities in the City and had refused to pay the charge levied by the 1956 law. It denied that the 1886 act as accepted constituted a contract protected by the contract clause of the Constitution, and sought discovery of the monthly service charges received by defendant, and a decree for the amount owed. Southern Bell's answer denied the statute sought to impose a charge upon it, and, if it did, asserted it violated the contract clauses of the State and Federal Constitutions. Defendant pleaded it held an irrevocable grant or franchise to use public streets without paying compensation therefor, under the 1886 statute. A cross bill sought an adjudication that the Company was not liable for the

charge and an injunction restraining the City from further attempts to collect it.

No testimony was taken, but there was a lengthy stipulation of facts, with a number of exhibits. The chancery court held that Sec. 5 (e), Ch. 372, Laws of 1956, was intended to apply to the defendant, and does not violate the contract clause of the Mississippi Constitution. It dismissed the cross bill except with reference to the stay of the effective date of the decree.

However, the court entered only an interlocutory order, holding the City was entitled to recover from defendant the amount of the charge, but no final decree would be entered until the parties had reasonable opportunity to appeal to this Court. After that review, defendant would have 120 days after judgment to take "whatever further action it deems proper in the federal courts." This appeal with supersedeas is from that interlocutory order.

## II.

The 1956 statute attempts to impose upon Southern Bell a two per cent charge or rent for the use of the streets, alleys and public places of the municipality with its poles, lines and other facilities. However, we have concluded that the charge of Sec. 5 (e) violates Sec. 16 of the Miss. Constitution, prohibiting laws impairing the obligation of contracts. Accordingly we do not reach or consider the validity of the charge under the contract clause of the U. S. Constitution, Article I, Sec. 10.

Miss. Laws 1886, Ch. 38, Sec. 1, quoted above, constituted an offer by the State to telephone and telegraph companies to use highways and streets for the purpose of providing citizens with telephone service without any requirement of paying compensation to either municipalities or the State. The continued maintenance of poles, lines and other facilities by its predecessors and appellant, after 1886, as well as the continued construc-

tion, expansion, and extension of such lines on the public streets of Meridian constituted an acceptance by Southern Bell and its predecessors of the offer of the right to use the streets, which was contained in the 1886 Act. Under such circumstances, the great weight of authority holds that these acts of acceptance resulted in the creation of an irrevocable contract between appellant, on the one hand, and the State, on the other, which is protected from impairment by the contract clause of the State Constitution. Hence imposition upon appellant of the two per cent monthly service charge as compensation for the use of the streets constitutes an unlawful impairment of the obligations of this contract so created.

 █ The leading case expanding the contract clause of the United States Constitution was Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L. Ed. 629 (1819), in which by Chief Justice John Marshall the Court held for the first time that a corporate charter was a contract protected against impairment by state legislation. Following a suggestion in Judge Story's concurring opinion, its principal effect as to corporate charters has been greatly modified, by a reservation in state constitutions of the statutory power to alter or repeal such charters. Miss. Const. 1890, Secs. 178, 179; Miss. College v. May, 128 So. 2d 557 (Miss. 1961). The rule of strict construction of such grants and a broad police power have also mitigated much of the effect of the Dartmouth College case. Wright, The Contract Clause of the Constitution (1938), pp. 63, 166, 168-178; Hale, The Supreme Court and the Contract Clause, 57 Harv. L. Rev. 512, 621, 852 (1944). Contract clauses of the states' and federal constitutions are substantially similar in terminology and interpretation. The protected areas of such state grants are relevant today principally as to grants which occurred before the present Mississippi Constitution of 1890, as here. In such

instances, this Court has followed the principles of the Dartmouth College case. Southern Realty Co. v. Tchula Cooperative Stores, 114 Miss. 309, 323, 75 So. 121 (1917); Martin v. O'Brien, 34 Miss. 21 (1857); Stone v. Yazoo and M. V. R. R. Co., 62 Miss. 607 (1885).

A corporate charter to a railroad company, before the 1890 Miss. Constitution, giving it the right to fix rates within certain maximum and minimum limits, is a contract protected by Constitution Sec. 16 from impairment by a mileage privilege tax. Gulf & S. I. R. R. Company v. Adams, 90 Miss. 559, 605, 45 So. 91 (1907). A municipal grant of an exclusive privilege to keep a wharf for a period of years is impaired by the issuance of an additional license to another. Martin v. O'Brien, 34 Miss. 21, 38 (1857). The grant under an 1888 charter to a corporation to hold property without limit is impaired by a 1912 statute prohibiting corporations from acquiring agricultural lands in the state. Southern Utility Co. v. Tchula Cooperative Stores, 114 Miss. 309, 322, 75 So. 121 (1917). Vicksburg gave a water works company a 30-year exclusive right to maintain a utility in the city. Subsequently the city refused to carry out certain provisions of that franchise and proceeded to issue bonds to construct its own water works system. This action was enjoined because the exclusive franchise was a contract protected against impairment by the contract clause of the U. S. Constitution. Vicksburg v. Vicksburg Water Works Co., 202 U. S. 453, 26 S. Ct. 660, 50 L. Ed. 1102 (1905). On the other hand, the contract clause is qualified by a proper exercise of. the police power. Superior Oil Company v. Foote, 214 Miss. 857, 890, 59 So. 2d 85, 844, 37 A. L. R. 2d 415 (1952).

These and numerous other decisions by this Court interpreting the contract clause of the Mississippi Constitution are in accord with decisions from other states and the federal courts. They are consistent with the

cases which will be hereafter discussed pertaining to the particular issue in the instant case.

The rationale for protection under the contract clause of an accepted offer to use streets without compensation developed on an historical basis. In the nineteenth century there was great progress in scientific development and discovery, with new and important devices for the benefit of the people being encouraged and invented. Before 1850 the telegraph came into public use, and in 1857 Mississippi enacted a statute authorizing such companies to construct their lines on public highways and streets. Miss. Code 1857, p. 300. In 1876, the telephone was invented, and thereafter several companies entered Mississippi to operate such businesses. Chap. 38, Laws of 1886, which constituted the offer here, broadened the former statute applying only to telegraph companies and extended it to include telephone companies. The statute was entitled ''An act to encourage and facilitate the construction of'' telephone lines. Apparently the Legislature thought that such companies should be encouraged to provide an effective communications service for the public on a statewide basis.

Before 1883 the Louisiana Telephone Company maintained telephone exchanges, poles and lines on the streets of Meridian and other municipalities. On August 4, 1883, Louisiana conveyed its property to Great Southern Telephone and Telegraph Company. Subsequently and during each year up until 1898, Great Southern expanded, constructed, maintained and operated its lines and facilities over the streets of the City of Meridian. The Cumberland Telephone and Telegraph Company had begun to do business in Mississippi before 1886, and after the 1886 statute it continued to expand and maintain its lines and facilities in Mississippi. In 1898 Great Southern consolidated with Cumberland, and Cumberland continued to do business in this State and to expand and maintain its lines and facilities on the

streets of Meridian and other municipalities in the State. In 1926 Southern Bell purchased Cumberland and succeeded to all of the rights and property of Cumberland. Since 1926 Southern Bell has continued to expand, maintain, construct and operate its telephone plant and facilities in, on and across the streets, highways and roads of the State, including Meridian. Southern Bell and its predecessors have continously and uninterrupedly done this since before the year 1884.

 The State could not revoke the grant of a right to use the streets after the grant had been accepted by appellant's predecessors, by the omission of the 1886 law from the Code of 1892. The offer contained in the 1886 act had already been accepted. A subsequent repeal could not affect vested contractual rights. The 1886 grant of a right-of-way to telephone companies was reconfirmed in Miss. Code 1906, Sec. 929, and now appears as Miss. Code 1942, Rec., Secs. 7837, 7841. Statutes subsequent to the Constitution of 1890 are subject to its provisions, including Constitution Secs. 178, 179, but that issue is not involved here, since the offer was made and accepted before the 1890 Constitution.

 A municipality's power over its streets is derived from the legislature which has plenary control over municipal streets. Appellant relies upon Hodges v. Western Union Telegraph Company, 72 Miss. 910, 18 So. 84 (1895). The City of Meridian passed an ordinance requiring all telegraph companies to pay a pole charge as rent to the city for use of its streets, alleys and public places, and brought suit to recover that rent. The Court held that the legislature, which has supreme power over municipal streets, had granted the telegraph company a right to use them without compensation under Laws 1886, Chap. 38. The municipal ordinance conflicted with the statute, and the former was invalid. That was the issue in the case. In a dictum, it was observed that the grant by the State was a revocable license.

That was not an issue and was not necessary to the decision.

In Willmut Gas and Oil Company v. Covington County, 221 Miss. 613, 71 So. 2d 184 (1954), the Court upheld a claim of a county for a rental for the use of a right of way by a gas pipeline company over sixteenth section, school lands. The decision was based upon the conclusions that such school lands are held in trust for the schools of the township, and Sec. 95, Miss. Const. 1890, prohibiting the donation of lands belonging to the State, precluded an uncompensated grant by the State of an easement across a sixteenth section. See also Miss. Const., Sec. 211. Hence Code of 1942, Sec. 2780, granting an easement, included compensation for a reasonable rental or use of the right of way. That decision was based on statutory and constitutional provisions enacted after 1890. It was said the decision did not apply "to public lands other than school lands." Hence *Willmut* was based principally upon constitutional restrictions effective under the 1890 Constitution, which was subsequent to the accepted offer under the 1886 act. Referring to other types of easements across public lands, the Court cited *Hodges*, which had said that an easement to a telegraph company was a revocable license; but that reference and statement were collateral comments and not part of the decision in *Willmut*. Hence the two cases upon which the City relies, *Hodges* and *Willmut*, do not decide the present issue.

### III.

The general rule controlling here is summarized in 12 Am. Jur., Constitutional Law, Sec. 414: "It is general principle that the privilege granted by the state or municipality of the use of streets and highways for quasi-public purposes becomes, when accepted or at least when accepted and acted upon, a contract within the provision of the Federal Constitution forbidding the

passage of any law impairing the obligation of contract. It seems clear that to bring the grant of a right or privilege in a street within the protection of the contract laws, it must at least be accepted by the person or corporation to which it is granted. The courts, however, in declaring the principle, quite commonly state or imply that the privilege not only must be accepted, but must be acted upon; and in most of the cases in which the contract clause has been invoked, it appears not only that the privilege had been accepted, but that large sums of money had been expended in reliance thereon.''

To the same effect is 16 C. J. S., Constitutional Law, Sec. 311, which states: ''A valid contract or franchise granted by a municipality for the use of the streets for certain purposes is protected by the contract clause of the constitution against impairment by the state or any of its agencies whether in the form of constitutional provisions, legislative enactments, charter provisions, or municipal ordinances.''

12 McQuillin, Municipal Corporations (3d ed 1950), Sec. 34.06 says: ''But when the right to use the streets is granted and accepted and all conditions imposed incident to the right performed, it ceases to be a mere license and becomes a valid contract, and constitutes a vested right. It is thereupon binding upon both parties. . . . The contract right, once acquired, cannot be impaired by subsequent legislation, in the absence of provisions to the contrary.''

These texts cite a large number of cases holding to the stated effect. Reference will be made to a few of them. Perhaps the leading case is Russell v. Sebastian, 233 U. S. 195, 34 S. Ct. 517, 58 L. Ed. 912 (1914). The issue was whether a gas company could lay an extension of its line in the City of Los Angeles under an 1879 constitutional section which gave the company the ''privilege'' of using the streets. That provision was repealed by a 1911 constitutional amendment. The California

court held the authority had terminated in 1911, but the United States Supreme Court reversed. The grant, resulting from an acceptance of the state's offer, constituted a contract, and vested in the company a property right protected by the contract clause. With reference to the extent of the grant, the actual user did not measure it. When accepted and acted upon, it became binding as an entirety, "not foot by foot, as pipes were laid." The offer as made was accepted as an entirety, not *pro tanto*.

Pacific Telephone and Telegraph Company v. City of Los Angeles, 44 Cal. 2d 272, 282 P. 2d 36 (1955), interpreted a state statute somewhat similar to Ch. 38, Miss. Laws 1886. The California act provided that telephone companies "may construct lines" along and upon public roads and highways. It was held this offer was accepted in its entirety by the telephone company; that the grant contemplated new streets to be opened and old ones lengthened as undeveloped areas became settled. Owensbore v. Cumberland Tel. and Tel. Co., 230 U. S. 58, 33 S. Ct. 988, 57 L. Ed. 1389 (1913), is similar and reached the same result. The municipal ordinance was an offer accepted by the telephone company, and became a contract constituting an irrevocable right. It could not be impaired by a subsequent ordinance.

In City of Louisville v. Cumberland Tel. and Tel. Co., 224 U. S. 649, 663-664, 32 S. Ct. 572, 56 L. Ed. 934 (1912), a statute and ratifying ordinance authorized the telephone company to erect its poles over streets and highways. It was held that, when it accepted this offer and constructed its facilities, the resulting contract was protected against impairment. Commenting on the duration of such franchise, the court said:

"In considering the duration of such franchise it is necessary to consider that a telephone system cannot be operated without the use of poles, conduits, wires and fixtures. These structures are permanent in their nature

and require a large investment for their erection and constuction. To say that the right to maintain these appliances was only a license, which could be revoked at will, would operate to nullify the charter itself, and thus defeat the state's purpose to secure a telephone system for public use. For, manifestly, no one would have been willing to incur the heavy expense of installing these necessary and costly fixtures if they were removable at will of the city, and the utility and value of the entire plant be thereby destroyed. Such a construction of the charter cannot be supported, either from a practical or technical standpoint.''

Among other cases to the same effect are the following: Southern Bell Tel. and Tel. Co. v. Commonwealth of Kentucky, 266 S. W. 2d 308 (Ky. 1954); Grand Trunk R. R. Co. v. City of South Bend, 227 U. S. 544, 33 S. Ct. 303, 57 L. Ed. 633 (1913); New York Electric Lines v. Empire Subway Co., 235 U. S. 179, 192, 35 S. Ct. 72, 59 L. Ed. 184 (1914); Ohio Public Service Co. v. Ohio, 274 U. S. 12, 47 S. Ct. 480, 71 L. Ed. 898 (1927); Southern Bell Tel. and Tel. Co. v. City of Mobile, 162 F. 523, affirmed, 174 F. 1020 (CCA 5th 1909); City of Petaluma v. Pacific Tel. and Tel. Co., 44 Cal. 2d 284, 282 P. 2d 43 (1955); Pacific Tel. and Tel. Co. v. City and County of San Francisco, 51 Cal. 2d 766, 336 P. 2d 514 (1959); Traverse City v. Consumers Power Co., 340 Mich. 85, 64 N. W. 2d 894 (1954); City of New Orleans v. Great Southern Tel. and Tel. Co., 40 L. Ann. 41, 3 So. 533 (1888); Southern Bell Tel. and Tel. Co. v. City of Nashville, 35 Tenn. App. 207, 243 S. W. 2d 617, 619 (1951); City of Seattle v. Western Union Telegraph Co., 21 Wash. 2d 838, 153 P. 2d 859 (1944); see Wright, The Contract Clause of the Constitution (1938), pp. 132-134. St. Louis v. Western Union Telegraph Co., 149 U. S. 465, 13 S. Ct. 990, 37 L. Ed. 810 (1893), has in effect been repudiated by subsequent decisions, including Russell v. Sebas-

tian, nor are the few other cases cited by appellee in point.

## IV.

██ █ This is one of those rare cases where the overwhelming weight of authority on a constitutional issue supports a particular result. Hence we must conclude that the offer contained in the 1886 act was not revocable after its acceptance by appellant's predecessors, but, when accepted, it created an irrevocable contract right in favor of Southern Bell and its predecessors which is protected against impairment by the 1956 two per cent rent or charge, under Sec. 16 of the Mississippi Constitution. Nor were those rights frozen as of the adoption of the 1890 Constitution and the Code of 1892. *Sebastian* and many other cases hold that the scope of the grant is not measured by the use of the streets at any given time, but as an entirety, by the undertaking invited and encouraged by the grant. ██ █ Appellant has not exceeded its rights under the contract by operating under streets and using its lines for the transmission of radio, television, teletype and other modern communication developments. Ball v. American Tel. and Tel. Co., 227 Miss. 218, 86 So. 2d 43 (1956), refused to enjoin the use of a coaxial cable buried in the ground for television and radio transmission. It still employed the use of electrical impulses, and related uses are integral parts of the telephone company's business. Pacific Tel. and Tel. Co. v. City of Los Angeles, 44 Cal. 2d 272, 282 P. 2d 36 (1955). The precedents construe the accepted grant as of perpetual duration for the business of furnishing telephone service in the state. ██ █ The right to use the streets resulting from acceptance of the 1886 offer was transferable and assignable as a property right. City of Louisville v. Cumberland Tel. and Tel. Co., 224 U. S. 649, 32 S. Ct. 572, 56 L. Ed. 934 (1912).

■ ■ Appellant's rights were not lost because its predecessors obtained franchises from Meridian and other municipalities. The making of such agreements is not inconsistent with the claim of a contractual right to use the streets. ■ ■ The city can regulate under its police power, ■ ■ and a utility has a right to maintain cooperative relationships with a municipality without waiving its rights under a statutory grant. Northwestern Tel. Co. v. City of Minneapolis, 81 Minn. 140, 86 N. W. 69, 53 L. R. A. 175, 188 (1900); Traverse City v. Consumers Power Co., *supra;* State v. Chariton Tel. Co., 173 Iowa 497, 155 N. W. 968, (1916). ■ ■ Moreover, these acts, and the use of eminent domain powers subsequent to the 1890 Constitution do not constitute a waiver by appellant of its franchise, under Miss. Constitution Sec. 179. Sec. 16, the contract clause, is of equal dignity with and must be read along with Sec. 179.

■ ■ Where abandonment or waiver of a vested property right is claimed, the intention to abandon or waive it must be shown by "full and clear" evidence. There is no evidence to that effect here. See Columbus and Greenville Railway Co. v. Dunn, 184 Miss. 706, 185 So. 583 (1939).

■ ■ In summary, we hold that the two percent rent or charge sought to be imposed by Miss. Laws 1956, Ch. 372, Sec. 5 (e), is invalid insofar as it is applied to appellant, since it would impair the property right vested in Southern Bell. Miss. Laws 1886, Ch. 38, Sec. 1, constituted an offer to the company and its predecessors to use the streets of the City of Meridian for its poles and lines, in order to encourage the development of this communication facility. That offer was accepted by appellant's predecessors, and they and Southern Bell have continued to use, maintain, construct and add to their facilities pursuant to that offer. The result is an accepted contract which cannot be impaired by the imposition of an additional charge for use of the streets. This is an

established principle of constitutional law, and we are not warranted in changing it by judicial interpretation.

Beginning with Chief Justice Marshall's opinion in the *Dartmouth College case,* the protection of vested property rights in a democracy has been given value and significance in constitutional decisions. This principle has extended to the corporate form of business enterprise. Because of its limitations, the contract clause has been generally superseded for this purpose by due process. See Wright, The Contract Clause of the Constitution (1938), pp. 39, 127, 243-259. However, the instant case is, we think, a clear one for application of the contract clause (Sec. 16) of the Mississippi Constitution to corporate rights vested prior to 1890; otherwise, Sec. 16 would be a useless appendage to the State's Constitution.

■ ■ Of course the state and the city have ample power to regulate and control the use by appellant of streets and highways. Moreover, this decision does not affect the taxing power of the state in any respect. Parenthetically, it may be noted that Miss. Laws 1960, Ch. 455, being Code of 1942, Rec., Secs. 10,109-01 through 10,109-08, authorizes municipalities to impose upon all telephone and communication facilities an additional tax of two per cent of gross revenue collected within the corporate limits. The amount of the tax is added to the sales price of the service.

The decree of the chancery court, sustaining the validity of the charge for use of streets, under Miss. Laws 1956, Ch. 372, Sec. 5 (e), and holding appellant liable for it, is reversed. Judgment is rendered here dismissing with prejudice appellee's bill of complaint, and adjudicating that the charge is invalid as applied to appellant, because it impairs the obligation of its contract right.

Reversed and judgment rendered for appellant.

All Justices concur.