ALABAMA & VICKSBURG RAILWAY COMPANY *v.* CUMBERLAND
TELEPHONE & TELEGRAPH COMPANY ET AL.

[41 South. Rep., 258.]

1. EMINENT DOMAIN.  *Telephone companies.  Code* 1892, §§ 854 to 858
and 4291.

Code 1892, §§ 854 to 858 and 4291, authorizing telegraph companies
to exercise the right of eminent domain, do not embrace or confer
power upon a telephone company.

2. SAME.  *Laws* 1886, *ch.* 38, *p.* 93.  *Repeal.*

Laws 1886, ch. 38, p. 93, authorizing telephone or telegraph com-
panies to condemn land for their use, was repealed by Code 1892,
§§ 854 to 858 and 4291.

3. SAME.  *Constitution* 1890, *sec.* 195.

Telephone companies are not empowered to exercise the right of
eminent domain, in the absence of statutory authority, although
declared to be common carriers by Constitution 1890, sec. 195.

4. SAME.  *Who may question power.  Dummy.*

The owner of land sought to be condemned by a telegraph com-
pany cannot defeat its statutory right of eminent domain by
showing that it is a dummy, organized to enable a telephone com-
pany to do by indirection what is forbidden to be done directly,
although the state might do so.

FROM the chancery court of Lauderdale county.

HON. JAMES L. McCASKILL, Chancellor.

The railway company, the appellant, was complainant in the
court below; the Cumberland Telephone & Telegraph Company,
a foreign corporation, was the only original defendant there, but
the Mississippi Telegraph Company, a domestic corporation, was
made defendant by a supplemental bill.   From a decree dissolv-
ing an injunction as to both defendants the complainants ap-
pealed to the supreme court.

The Cumberland Telephone & Telegraph Company, a Kentucky corporation, instituted eminent domain proceedings in Hinds county for the purpose of condemning a right of way for itself as a telephone company along the line of the Alabama & Vicksburg Railway Company between Jackson and Meridian. While this proceeding was pending, the railway company filed in the chancery court of Lauderdale county a bill for an injunction enjoining that proceeding. The Cumberland Telephone & Telegraph Company answered, making its answer a cross bill. The defendant company moved the court to dissolve the injunction, and the court overruled the motion and allowed the railway company time to answer the cross bill. Before this action of the court the Mississippi Telegraph Company, a Mississippi corporation, instituted eminent domain proceedings in Hinds county for the purpose of condemning a right of way along the complainant's tracks between Jackson and Meridian, and thereafter the said railway company filed a supplemental bill in this its chancey suit for the purpose of enjoining the Mississippi Telegraph Company, alleging that it was a mere "dummy" company of the Cumberland Telephone & Telegraph Company. Thereafter the Mississippi Telegraph Company filed its demurrer to the supplemental bill. The railway company having failed to answer the cross bill as required by the order of the court, a decree *pro confesso* thereto was entered against it. On appeal the contention of the railway company was that the telephone company had no authority to exercise the right of eminent domain under the laws of the state, and that the Mississippi Telegraph Company was a "dummy" corporation organized for the purpose of enabling the Cumberland Telephone & Telegraph Company to do indirectly what it could not do directly. The Cumberland Telephone & Telegraph Company based its right of eminent domain on sec. 195 of the constitution of the state, declaring telephone companies to be common carriers.

*McWillie & Thompson, J. M. Boone* and *Fewell, Bozeman & Fewell,* for appellant.

The main contention in this case on the part of the appellant is that appellees have no power to exercise the right of eminent domain for the purpose of doing a telephone business; and, if it be true that the Cumberland Telephone & Telegraph Company, as a matter of fact, does a telegraphic business, in addition to its telephone business, this would not give power to exercise the right of eminent domain for a telephone business; and the appellant, desiring to resist the condemnation of a right of way for telephone purposes, took no proof as to whether or not the Cumberland Company was engaged in some part of the state in the telegraph business, but asks that it be enjoined from condemning right of way for the purposes of a telephone business.

Appellees contend that in as much as the appellant has a contract with the Western Union Telegraph Company for the exclusive use of the right of way, that the Western Union Company is the party inspiring resistance on the part of the railway company, and that such an exclusive contract is against public policy. If we concede that such a contract exists between the railway company and the Western Union Company, and that the contract is void, this does not confer the power of eminent domain upon the appellees. This power can only be conferred by legislative enactment. The alleged bad faith of appellant in making resistance because of the contract with the Western Union Company as alleged, does not supply legislative enactment. It does not matter what motive induces the railway company to resist the condemnation of its right of way, if resistance is based upon the want of legislative authority in the appellees. The railway company has a right to forbid any corporation or person from entering upon or using its right of way, if it or he have no legal right to enter upon and use the same; and the question of the motive and the purposes for resisting cannot in any respect weaken the right to resist the entry. No amount of *laches* or bad faith on the part of the railway com-

pany can create a right in the Cumberland Company that does
not otherwise exist. The power to exercise the right of eminent
domain must be expressly conferred by a legislative enactment,
and the fact that our constitution makes telephone companies
common carriers does not confer upon them the power of emi-
nent domain, for the reason that no statute has ever conferred
such power upon any common carrier as such.

Statutes conferring the right of eminent domain will be con-
strued strictly, and unless the letter of the law clearly confers
the right it does not exist. *Ligare* v. *Chicago*, 32 Am. St. Rep.,
179.

It is clear that the appellees recognize the force of our con-
tention that a telephone is not included in a telegraph, and fur-
ther recognize the correctness of our contention that the Cum-
berland Company does not carry on a telegraphic business in
this state, although the word "Telegraph" is in its name, by the
fact that it has organized under a charter calling itself the
"Mississippi Telegraph Company," limiting the operation of
business under that charter between Jackson, Mississippi, and
Meridian, Mississippi, and between Meridian aad West Point,
Mississippi—the very identical territory covered by the appli-
cation for condemnation in this and its companion case. The
Mississippi Telegraph Company stands before this court by its
demurrer admitting the allegations of the supplemental bill as
to the character and purposes of its organization; admitting that
the Cumberland Telephone & Telegraph Company does not do
a telegraphic business, but has taken out a separate charter
that it may do so. Admitting, for agument sake, that what-
ever complaint can be made of the Mississippi Telegraph Com-
pany touching its charter can only be made by the state in a
*quo warranto,* it is nevertheless proper under the facts of this
case to enjoin it from condemning a right of way for telephone
purposes. In the face of the admission by the demurrer that
it is simply organized as a "dummy" for the Cumberland
Telephone & Telegraph Company, and for the purpose of

exercising the power of eminent domain to aid that company, it is clear that the Mississippi Company is subject to injunction and should be prohibited from condemning a right of way for telephone purposes. If this be not true, then the withholding from telephone companies of the right to condemn private property for a right of way by the legislature is defeated.

*Mayes & Longstreet,* for appellees.

Conceding for the argument now that the Cumberland Company is a telephone company only; the question then arises whether a telephone company, under the statutes of Mississippi, can exercise the power of eminent domain to condemn a right of way along the line of a railroad company.

By sec. 195 of the constitution, a telephone company, as such, is declared to be a common carrier. Its property and business are thereby fixed in the organic law to be effected with a public interest, and as such subject to public control. See, also, secs. 4324 to 4326 of the code.

By ch. 13 of the laws of 1897, p. 12, Chapter 40 of the annotated code on the subject of "Eminent Domain" was so amended as to provide that telegraph companies chartered under the laws of this state or any other state of the United States, desiring to build, maintain and operate a line of telegraph upon the right of way of any railroad in this state, might condemn, etc.

In this connection, the use of the words "telegraph company" includes a telephone company. A telephone company is a telegraph company within the purview of such legislation. A telegraph and a telephone company, using the words in their commonplace acceptation, are both nothing but means for the transmission of communication by the medium of electricity between a transmitter at one end and a receiver at the other.

As stated before, in legislation similar to this the expression "telegraph company" has been commonly taken to include telephone companies. *Northwestern Co.* v. *Chicago, etc., R'y Co.,* 76 Minn., 334; *San Antonio R'y Co.* v. *Southwestern Co.,* 93

Texas, 313; *Davis* v. *Pacific Co.,* 127 Cal., 312; *C. & P. Co.* v. *B. & O. Co.,* 66 Md., 399; *State* v. *Bell Telephone Co.,* 23 Fed. Rep., 539; *Iowa Co.* v. *Oskaloosa,* 67 Iowa, 250; *Commonwealth* v. *Penn. Tel. Co.,* 42 Leg. Int., 180; *Attorney-General* v. *Telephone Co.,* L. R. A., 6 (Q. B. Div., 244); *Central Telephone Co.* v. *W. & W. R. R. Co.,* 4 Am. Elec. Cases, 260; *Hudson River Co.* v. *Turnpike Co.,* 135 N. Y., 393; *Eela* v. *American Co.,* 143 N. Y., 133; *State* v. *Central Co.,* 53 N. J. L., 341; *N. Y. Co.* v. *Keesey,* 6 Am. Elec. Cases, 107; *Wisconsin Co.* v. *Oshkosh,* 62 Wis., 32; *Roberts* v. *Wisconsin Co.,* 77 Wis., 589; *Cumberland Co.* v. *United Railway Co.,* 42 Fed. Rep., 272; *Franklin* v. *Tel. Co.,* 69 Iowa, 97; *Richmond* v. *Telegraph Co.,* 85 Fed. Rep., 19.

It is true that the case in 85 Federal Reports cited above was reversed by the supreme court of the United States in 174 U. S., 761, but that reversal was expressly made on the proposition that at the time when the acts of Congress in question were enacted, the telephone business as a practical art was unknown, and therefore that telephoning could not have been within the contemplation of Congress at the time when they enacted such statutes. The underlying drift of the argument of the supreme court recognizes the fact that otherwise such would have been the correct interpretation of the statute. That this is the proper analysis of the decision in 174 U. S. is shown by the further fact that that case is expressly considered, and so analyzed by some of the state cases cited above.

The fifth ground for dissolution alleged is that the complainant in its bill did not employ toward the court that good faith which is required of those who seek the extraordinary relief of injunction, in this: That the injunction was not in fact sought and obtained for the reasons set forth in the bill and for the protection of complainants, right of way and similar interests, but in fact and truth at the instance of and in behalf of the Western Union Telegraph Company, with which company complainant had an unlawful and void contract for the exclusive

use of complainant's right of way as and for telegraph and telephone lines; and which facts were not disclosed to the court by complainant's bill.

This court will observe that this averment was one of the points on which the railway company was required by the answer to make discovery, and as to which it allowed *pro confesso* to go, and as to which it withheld from the court the discovery prayed for, without giving any reason for such conduct or excuse therefrom, and without, even at the time of the hearing, asking for any further time in which to make discovery. See, also, Powell's affidavit, Transcript p. 48, *et seq.*

As to the attitude of this contract with the Western Union Telegraph Company, its legal status is not an open question either in this or in the federal courts.  *United States* v. *Pacific R'y Co.,* 160 U. S., 1; *Railroad Co.* v. *Telegraph Co.,* 76 Miss., 731 (s.c., 26 South. Rep., 370).

WHITFIELD, C. J., delivered the opinion of the court.

Whatever may be the true rule of interpretation as to whether the phrase "telegraph company" necessarily embraces "telephone company," as held in many authorities cited by the learned counsel for appellee, it is quite clear, in our state, that telegraph companies and telephone companies are treated, and have always been treated, as separate and distinct companies. Chapter 38, p. 93, of the acts of 1886, was manifestly repealed by the provisions of Code 1892, § § 854-858, inclusive, and sec. 4291.  There is nothing in the constitutional provisions referred to which conferred upon telephone companies any authority to exercise the right of eminent domain.  It results from these views that the Cumberland Telephone & Telegraph Company was without any authority under our law to exercise the right of eminent domain in this case.  Irrespective, therefore, of the question of laches on the part of appellant as to answering the cross bill, since the Cumberland Telephone & Telegraph Company had in no event power to exercise the right

of eminent domain, the action of the court below dissolving the injunction against it was erroneous.

Turning, now, to the case made by the Mississippi Telegraph Company, it is just as clear that that company was duly and regularly incorporated under the laws of this state as a telegraph company, and under our statutes had the authority to exercise the right of eminent domain in this case. The sole objection to the exercise of that right by the Mississippi Telegraph Company set up in the pleadings is that it was but a dummy for the Cumberland Telephone & Telegraph Company, had no capital stock, and was organized for the mere purpose of enabling the Cumberland Telephone & Telegraph Company to do indirectly what it could not directly do, and that its organization and incorporation were consequently unlawful; but whether the Mississippi Telegraph Company is a properly organized company under the laws of this state is a question between it and the state, not to be inquired into in this proceeding by the appellant.

*The result is that the decree as to the Cumberland Telephone & Telegraph Company is reversed, and its bill dismissed; but the decree as to the Mississippi Telegraph Company is affirmed.*