BALL *v.* AMERICAN TELEPHONE & TELEGRAPH COMPANY

No. 39998          March 19, 1956          86 So. 2d 43

*Williams* & *Williams, H. H. Parker,* Poplarville, for appellant.

*M. M. Roberts,* Hattiesburg; *Morse* & *Morse, J. B. Mayfield,* Poplarville; *J. C. Higgins,* Cincinnati, Ohio, for appellee.

220

GILLESPIE, J.

The appellee, American Telephone and Telegraph Company, a New York corporation, qualified to do business in the State of Mississippi, filed its petition in the

Circuit Court of Pearl River County, Mississippi, seeking to exercise the power of eminent domain and prayed for the organization of a special court of eminent domain. The petition alleged that the petitioner was authorized by its charter to engage in the business of furnishing facilities for communications between the various states of the United States, and that it proposed to construct as an addition to its present facilities new telephone and telegraph lines, being a new communication extending from the City of Jackson, Mississippi, to New Orleans, Louisiana, by way of Pearl River County, Mississippi, and that the rights and interests sought to be acquired over and under appellant's land were as follows:

"A right of way and easement to construct, operate, maintain, repair, replace and remove such telegraph and telephone and/or communication system as the petitioner, its successors and assigns, may from time to time require, consisting of underground cables, wires, conduits, splicing boxes and surface testing-terminal, repeaters and markers and other appurtenances upon, over and under a strip of land one rod wide across the above described land, together with the following rights, to place surface markers within said strip, to clear, and keep cleared all trees, roots, brush and other obstructions from the surface and subsurface of said strip and to install temporary gates in any fences crossing said strip."

On the trial in the special court of eminent domain, damages were fixed at $500.00. The sum was paid into court and construction of the facilities was begun by appellee and proceeded to completion. Appellant appealed to the circuit court, where the jury awarded the sum of $1500.00 damages, and the $1,000.00 additional damages was paid into court. Appellant has never accepted these awards. No further appeal was had from the eminent domain proceedings, and final judgment in condemnation was entered by the circuit court on November 6, 1952.

On January 13, 1954, appellee filed in the chancery court of Pearl River County, Mississippi, a bill of complaint, seeking to enjoin appellee from using the right of way for television purposes, and enjoining appellee from going through or over complainant's property for any purpose whatsoever, and seeking to cancel the right of way condemned in the eminent domain proceedings as a cloud on the appellee's title and for damages in establishing the right of way, and for general relief. The bill charged that appellee had no right or authority to exercise the right of eminent domain for constructing a television line and use of the right of way for such purpose was not authorized by law; that such use was a private use and the judgment of the eminent domain court was void and the use being made of the right of way was without right and authority, and appellant was being deprived of his property without due process of law and in violation of Section 17 of the Mississippi Constitution. An amendment to this bill charged that appellee masqueraded in the eminent domain court as a telephone and telegraph company to obtain complainant's property for a television line, and was guilty of fraud upon the eminent domain court and upon appellant in securing rights to lay a television transmission line.

The proof in the injunction proceedings, insofar as we are here concerned, consists of the testimony of an official of the American Telephone and Telegraph Company. His testimony was to the effect that the facilities laid under the right of way acquired through appellant's land consisted of a cable of about two and one-half inches in diameter, sheathed in lead, with wires and coaxial cables contained therein, and installed 30 inches deep in the ground, with stakes about 500 feet apart indicating the right of way; that the only surface equipment are the markers so as to be able to follow the cable line; that the cable line is under gas pressure containing an inert nitrogen gas to keep moisture out of the cable;

that the cable contains 8 coaxial tubes about the size of a pencil with about 160 small copper wires in the center, surrounded by the cables with some wire on the outside perimeter of the 8 coaxial tubes. The coaxial tubes and the wires are used for communication purposes; that the copper wires are used for short circuits to serve the towns in the immediate vicinity, and the tubes for long circuits and program circuits; that the system is equipped with certain alarms to detect any trouble; that the purpose of the coaxial tubes or copper tubes is for telephone and telegraph circuits and television transmission; that 600 people can talk southbound through one tube and an equal number northbound in another tube, so that two tubes will carry 600 telephone conversations at the same time; that there are certain advantages in having these cables underground, such as temperature changes, less obstruction to property owners, and avoidance of storms; that very little trouble is experienced and he estimated that they would probably have one case of trouble each year between Jackson and New Orleans on the 220 mile line; that immediately upon construction of the line, it was put into use and two coaxial tubes were used for telephone and telegraph messages, and one tube was used for the transmission of television; that any of the 8 coaxial tubes could be used for television transmission if properly equipped, but as they are now equipped, the same tube could not be used simultaneously for telephone, telegraph and television; that it was highly improbable that all of the tubes would ever be used for television transmission, but it was theoretically possible, but to do so they would have to take off all of the telephones, and the way the tubes are equipped now, they are not designed or engineered for the purpose of being used solely for television.

The chancellor dismissed the bill on its merits and appellant appeals.

The question for our decision is: May a telephone and telegraph company, which has constructed a telephone

and telegraph cable line under an easement acquired by exercising the right of eminent domain, use the facilities thus constructed for television transmission along with telephone and telegraph transmission? Our answer to this question disposes of all other issues in the case.

By Section 195 of the Mississippi Constitution, telephone and telegraph companies are declared common carriers and subject to liability as such. Section 2841, Code of 1942, provides in part: "Telegraph and telephone companies, for the purpose of constructing new lines, are empowered to exercise the right of eminent domain, as provided in the chapter on that subject." Nowhere in the Constitution or statutes on eminent domain is there any reference to television.

■■ ■ Eminent domain rights are attributes of sovereignty, are in derogation of the common right, and acts conferring such right are to be strictly construed. Wise v. Yazoo City, 96 Miss. 507, 51 So. 453. In Postal Telegraph & Cable Co., et al v. Gulf & Ship Island RR Co., 110 Miss. 770, 70 So. 833, we held that a telephone company could not lease to a telegraph company the right to string an additional wire on the telephone poles for telegraph purposes because the additional wire would constitute an additional servitude on the servient estate, the railroad right of way; and in Alabama & Vicksburg RR. Co. v. Cumberland Telephone and Telegraph Co., et al, 88 Miss. 438, 41 So. 258, we held that telegraph companies and telephone companies are separate and distinct companies. In Richmond v. Southern Bell Tel. & Tel. Co., 174 U.S. 761, 19 S. Ct. 778, 43 L. Ed. 1162, the Supreme Court of the United States held that rights granted by an Act of Congress to telegraph companies did not extend to telephone companies.

■■■ We do not have the precise questions involved in this case as those decided in our previous cases cited above; and while those cases appear to be persuasive by analogy, we do not consider them binding on the ques-

tion whether the telephone and telegraph business includes television transmission. Television is but one of many scientific achievements of the past few decades made possible by developments of the carrier art. Some of the others are radio, teletype, and the phototelegraph, each of which employs electrical impulses in transmission. All these devices to some extent make use of cables and wires in the transmission process. Transmission techniques developed by or as an adjunct of the telephone business has made possible the services performed by these devices. We should not construe the eminent domain statutes so as to require the telephone and telegraph companies to secure new easements for every new device that employs the use of electrical impulses even when the new device performs a function other than the transmission of sound or articulate voice. To do so would lead to absurd and unreasonable results. We conclude that television transmission is an integral part of the telephone and telegraph business as it has developed and now exists. It follows that an easement acquired by eminent domain for telephone and telegraph lines, as the statute authorizes, may be used for television transmission along with other telephone and telegraph purposes.

We are confident that we commit no sin against the rights of private property. There is in fact no additional servitude on the servient estate. The cable that was laid under the appellant's land was constructed by authority of the statute as a new telephone and telegraph line, and appellant has been tendered full payment for the right to lay and maintain the cable. What concern is it then whether the silent and invisible impulses flowing through the cable carry radio, teletype, telephotography, telephone, telegraph, or television communication?

From what we have said, it is clear that the use made of the cable for television transmission is a public use. Whatever is transmitted by means of the cable, at least

within the limitations mentioned, is done by the appellee as a common carrier.

The learned chancellor properly dismissed the original bill.

Affirmed.

All justices concur.