INDEPENDENT THEATRE OWNERS OF ARK. *v.*
ARK. PUBLIC SERVICE COMM.

5-2783                                    361 S. W. 2d 642

Opinion delivered November 5, 1962.

[Rehearing denied December 3, 1962.]

*Leon B. Catlett* and *Howard Cockrill,* for appellant.

*Moses, McClellan, Arnold, Owen & McDermott; Edgar Mayfield* and *Mark Woolsey,* for appellee.

SAM ROBINSON, Associate Justice. Appellee, Midwest Video Corporation, hereinafter called Midwest, is authorized to engage in the business of furnishing television to subscribers for an agreed consideration. It does not, however, have the facilities to transmit from its studio in Little Rock to customers' receiving sets in homes or other places, the electrical impulses necessary to produce pictures and sound.

Appellee, Southwestern Bell Telephone Company, hereinafter called Southwestern, can furnish the required service, but refused the application of Midwest for such service until the Arkansas Public Service Commission (hereinafter called Commission) found that the service would be in the public interest, and approved a tariff for the service to be furnished. Midwest, therefore, filed a petition with the Commission asking that Southwestern be required to furnish the service. Southwestern filed an answer and agreed to furnish the service if approved by the Commission and a tariff was established.

Appellants, Independent Theatre Owners of Arkansas, Inc., United Theatres Corporation, and Rowley United Theatres, Inc., intervened asking that the Midwest petition be denied. After a hearing, the Commission granted the Midwest petition and approved a tariff for the services to be furnished by Southwestern.

This is an appeal by the theatre owners from a judgment of the Pulaski Circuit Court affirming the action of the Commission.

There are three issues on appeal. (1) Appellants contend that the service to be furnished by Southwestern is not in the public interest; (2) that the Public Service Commission does not have jurisdiction of the subject matter; and, (3) that the Federal Communications Commission has exclusive jurisdiction.

The sum and substance of appellants' argument that the proposed service is not in the public interest is that the appellant theater owners cannot successfully compete with the entertainment that will be furnished by Midwest in the form of television.

Midwest is not a public utility; it is a private concern engaged in furnishing television to members of the public who want to buy it, but it cannot distribute its product without the facilities of Southwestern. Midwest, therefore, asked that Southwestern, which is a public utility engaged in transmitting electrical impulses by wire, be required to furnish that service. Midwest is in

a position similar to that of the theater owners, who could not show pictures in their theaters unless they had the use of electricity furnished by the power company, and, no doubt, the power company could be compelled to furnish such service.

The only authority appellants cite to sustain their contention that the proposed service is not in the public interest is *Arkansas Electric Cooperative Corp.* v. *Arkansas Missouri Power Co.*, 221 Ark. 638, 255 S. W. 2d 674. We do not think that case sustains appellants' view, and we have found no other case sustaining that view. In that case the issues were whether, under the Arkansas statutes, Arkansas Electric could legally sell power to SPA, and whether, under federal legislation, SPA could legally bind itself to the performance of its contracts with Arkansas Electric.

In its finding in the case at bar, the Commission said: "All the Intervenors' arguments add up to one contention, that pay television will disrupt other segments of the entertainment business. Any new invention is likely to lead to economic change. This Commission cannot deny the people of Arkansas the benefits of a new entertainment media merely because other segments of the industry may be inconvenienced thereby." We think what the Commission said is a complete answer to appellants' contention on this point.

The next issue is whether the Commission had jurisdiction of the subject matter; that is, did the Commission have the authority to issue any orders at all in connection with pay television, or was it a non-utility service. If it is non-utility, the Commission does not have jurisdiction. *Associated Mechanical Contractors of Arkansas, etc.* v. *Arkansas Louisiana Gas Co.*, 225 Ark. 424, 283 S. W. 2d 123. But the Commission has the power and jurisdiction to regulate defined utilities operating as such. Ark. Stats. 73-202.

The term "public utilities" includes a person or corporation conveying or transmitting messages or com-

munications by telephone or telegraph. Ark. Stats. 73-201. If the sending of an electrical impulse over a coaxial cable owned and serviced by Southwestern, which produces a picture or sound, is conveying a message or communication by telephone or telegraph, then such service is a public utility subject to regulation by the Commission. Appellants contend that the operation of coaxial cables, although legal, does not come within the meaning of "conveying or transmitting messages or communications by telephone or telegraph" as authorized by Ark. Stats. 73-201.

In some localities, television reception by ordinary means is not good, and in some such locations, Community Antenna TV Companies, known as CATV, have been formed for the purpose of building a special antenna capable of receiving, without distortion, wireless electrical impulses, amplifying them, and distributing them by coaxial cable to those subscribing for the service. Appellants cite *Television Transmission, Inc.* v. *Public Utility Commission,* (Cal. 1956), 301 P. 2d 862, as holding that companies rendering such service do not come within the jurisdiction of a Public Service Commission. There is, however, a clear distinction between that case and the case at bar.

The above mentioned case turns squarely on the proposition that the transmission company was not a telephone corporation because it did not operate a telephone line, and therefore, did not come within the provisions of the California Code regulating telephone companies. In the case at bar, of course, Southwestern is a telephone company and the wires carrying the electrical impulses producing the sound and pictures will be carried on the telephone company's poles. In the cited California case, the Court said: "It does not follow, however, that because telephone corporations are not prevented by law from using their lines . . . for the transmission of television broadcasts, any corporation that uses the poles, wires, *et cetera,* to transmit such broadcasts is a telephone corporation."

Another case pointing out the distinction between an antenna company and a telephone company is *In Re New York Telephone Company*, 34 PUR 3rd 115. There, the New York Public Service Commission said: "The telephone company does not propose, under its tariff T1, to become an antenna company. It is not going to sell any service to the owners of television sets or erect any master antennas. [The same is true in the case at bar.] The service offering is limited to conveying (transporting or transmitting) for an antenna company, television signals from one point to another. Services of a like character are presently provided by the telephone company pursuant to field tariffs; for example, the telephone company provides channels for teletypewriter, teleprinter, telephotography, telautograph, Morse, and facsimile communication. In addition, channels are provided for the transmission from point to point of programs material such as music or other sound and for video program material. Similarly, the telephone company by offering channels to an antenna company is offering to provide a communication service—a variety of telephony or telegraphy—and nothing else.

"The mere fact that at this stage of development of this form of picture and sound transmission special coaxial cable and other special equipment must be installed in order to provide this particular service does not militate against the conclusion that the telephone company is providing telephone or telegraph service. A conclusion about the commisson's jurisdiction over the service proposed to be provided under Tariff T1 cannot be made to depend upon the type of system used, i.e., coaxial cable or ordinary telephone wires, but must be based on a determination whether thereby a telephonic or telegraphic communication service is being provided. We think one is.

"It is clear that the telephone company is undertaking to transmit intelligence from one point to another for the benefit of a subscriber, using principles of telephony (or telegraphy). It proposes to provide this serv-

ice upon similar terms to one and all seeking it. The company's filing of a tariff covering the service was proper.''

In *Ohio Telephone and Telegraph Co.* v. *Steen,* 85 N. E. 2d 579, it is said: ''The Court is also of the opinion . . . that the transmission of television is merely an advance or improvement in the art of telegraphy and telephony and therefore the right of eminent domain for telegraph and telephone purposes . . . is applicable to television.''

In *Ball* v. *American Telephone and Telegraph Co.,* 86 So. 2d 42, the Mississippi Court said: ''Television is but one of many scientific achivements of the past few decades made possible by developments of the carrier art. Some of the others are radio, teletype, and the phototelegraph, each of which employs electrical impulses in transmission. All these devices to some extent make use of cables and wires in the transmission process. Transmission techniques developed by or as an adjunct of the telephone business has made possible the services performed by these devices. We should not construe the eminent domain statutes so as to require the telephone and telegraph companies to secure new easements for every new device that employs the use of electrical impulses even when the new device performs a function other than the transmission of sound or articulate voice. To do so would lead to absurd and unreasonable results. We conclude that television transmission is an integral part of the telephone and telegraph business as it has developed and now exists.''

Next, appellants contend that the Arkansas Public Service Commission does not have jurisdiction because the service to be furnished by Midwest is interstate in character, and that Congress has pre-empted that field, giving the Federal Communications Commission exclusive jurisdiction. Appellants cite *In Re Bennett,* 89 PUR, N. S. 149. There, the Wisconsin Court held that it lacked jurisdiction to determine whether a community

television antenna is a public utility because the Court was of the opinion that Congress had completely occupied the television field. But the Wyoming Commission held that an antenna company was a public utility because of the wording of the Wyoming statute. *Re Cokeville Radio & Electric Co.,* 6 PUR 3d 129.

The tariff approved by the Arkansas Commission covers "intrastate closed circuit television channels furnished by the Telephone Company over facilities located wholly within the State of Arkansas". Telephone and telegraph communications taking place within a single state are intrastate. *Western Union Telegraph Co.* v. *Alabama Board of Assessment,* 132 U. S. 472, 33 L. Ed. 409, 10 Sup. Ct. 161.

The Communications Act of 1934, 47 USCA, Sec. 151, *et seq.,* recognizes the jurisdiction of the state over intrastate communications. Section 152 provides: "The provisions of this chapter shall apply to all interstate and foreign communication by wire . . . Nothing in this chapter shall be construed to apply or to give the Commission [FCC] jurisdiction with respect to (1) charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communication services by wire or radio of any carrier."

Congress has pre-empted the field of interstate communications, but has not pre-empted the field of intrastate communications. The service to be rendered by Southwestern, as described in the tariff approved by the Commission, is strictly intrastate in character. The Arkansas Commission, therefore, has jurisdiction to regulate such service.

Affirmed.

BOHLINGER, J., not participating.