**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 27, 2012

No. 11-60394

Lyle W. Cayce
Clerk

MARLOW, L.L.C.,

Plaintiff-Appellant

v.

BELLSOUTH TELECOMMUNICATIONS, INCORPORATED,

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Mississippi

Before STEWART, ELROD, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

In this diversity suit, a landowner seeks injunctive and compensatory relief from a telephone company for a trespass and for slandering its title to certain property. The district court granted summary judgment to the telephone company. We disagree with that court's conclusion that the telephone company had a constructive license but agree that it is not liable for slander of title. We AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

In 2002, the defendant BellSouth Telecommunications, Inc., a telephone company licensed to conduct business in Mississippi, obtained two easements from Earl Burkett on homestead property in Forrest County, Mississippi. Earl's

wife Helen did not join in the conveyances. One easement was over a 10' by 315' strip under which underground cable would be buried. The other was an easement on a 40' by 42' parcel, adjoining the other easement, on which BellSouth would place cabinets, a power pedestal, a cross-connect box, and other fixtures above ground. Both easements were properly recorded in the county land records.[1]

In December 2006, the Burketts conveyed the land by warranty deed to the plaintiff Marlow, L.L.C. In March 2010, Marlow sent BellSouth a letter demanding the removal of its equipment on the basis that the 2002 easements were void due to the absence of Helen Burkett's signature. In April 2010, Marlow filed suit in the Chancery Court of Forrest County seeking confirmation of title, injunctive relief, and damages for trespass. BellSouth removed the action to the United States District Court for the Southern District of Mississippi.

Once in federal court, Marlow filed an amended complaint, adding claims for slander of title and punitive damages based on BellSouth's attempt in 2010 to cure the deficient easements by obtaining Helen Burkett's signature on additional easements. After BellSouth's answer was filed, Marlow moved for partial summary judgment, requesting the court declare the easements void. In February 2011, the court granted the motion. The court concluded that the 2002 easement was on homestead property and required the joinder of both spouses. *See* Miss. Code Ann. § 89-1-29. That ruling is not contested.

BellSouth then moved for summary judgment on all of Marlow's remaining claims, namely, for trespass, injunctive relief, slander of title, and punitive damages. Marlow responded and moved for a permanent injunction. In May 2011, the district court granted BellSouth's motion and denied Marlow's. The

---

[1] There was evidence that BellSouth has maintained telecommunication lines across this property since 1996.

No. 11-60394

court interpreted a Mississippi statute as granting BellSouth a "constructive license" to remain on Marlow's land, thereby barring injunctive relief. The court also held that Mississippi's prior trespass doctrine prevented Marlow from collecting compensatory damages for a trespass. Finally, the district court rejected Marlow's slander of title and punitive damages claims, finding there was no evidence BellSouth acted with malice in obtaining Helen Burkett's signature on the 2010 easements. This timely appeal by Marlow followed, challenging each of the conclusions we just described.

## DISCUSSION

"We review a grant of summary judgment *de novo*, applying the same standard as the district court." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### I. Constructive License

The district court held that BellSouth had a constructive license[2] across the Marlow property based on the court's interpretation of this statute:

---

[2] The label of "constructive license" may have been borrowed from the caption of the statute that appears only, as far as we can discover, on the electronic version available from Westlaw. That phrase has never appeared with the statute in either a bill or a codification adopted by the legislature. We also do not find that any court had previously used that phrase in connection with the statute. The official version of the 1972 Mississippi Code is the revised manuscript approved in 1972, as thereafter revised, and as published by the company with which the State contracts. Miss. Code Ann. §§ 1-1-8 & 1-1-35 (Rev. 2005). The publishing company is LexisNexis. 1 Miss. Code Ann. v-vi. The title in the original 1972 printing of the Mississippi Code, which is the current version of the statute, is "Liability for damages caused by erection, continuance and use of lines."

Captions to bills and titles to individual statutes "may be resorted to in order to ascertain the intent of the legislature." *Giles v. Friendly Fin. Co. of Biloxi*, 185 So. 2d 659, 662 (Miss. 1966). "Constructive license" is not part of the official title. What is now Section 77-9-715 was originally entitled "Liability for damages" (1857 Code), then had no title at all (1871 and 1880 Codes), then was "The same [referring to "Telegraph companies may erect lines, etc.]: damages, etc." (1892 Code), which remained largely unchanged until the 1972 title. We find these titles consistent with our analysis of the text as we will discuss.

No. 11-60394

> Telegraph and telephone companies or associations shall be responsible for any damages which any person shall sustain by the erection, continuance, and use of telegraph and telephone lines and the fixtures thereof. In any action for the recovery thereof brought by any owner or possessor of land over or along which such line may run, damages shall be assessed for the permanent continuance of such line and fixtures, and on payment thereof the right to continue and use such line and fixtures shall exist as if by leave and license of the owner of the land.

Miss. Code Ann. § 77-9-715.

The district court held that this statute granted BellSouth a "constructive license to leave its lines and fixtures in place" once compensation was paid. The court rejected Marlow's argument that the statute applied only when telephone lines had been placed on public rights-of-way.

Sitting in diversity, we employ the methods of statutory interpretation used by the relevant state's courts. *See Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 529 F.3d 569, 572-73 (5th Cir. 2008). In Mississippi, "[t]he primary rule of construction is to ascertain the intent of the legislature from the statute as a whole and from the language used therein." *DePriest v. Barber*, 798 So. 2d 456, 458 (Miss. 2001) (quotation marks and citation omitted). The Mississippi Supreme Court has said it "resorts to the canons of statutory interpretation only where a statute is ambiguous or silent on a specific issue." *Lutz Homes, Inc. v. Weston*, 19 So. 3d 60, 62 (Miss. 2009). When the statute is ambiguous, "the court, in determining the legislative intent, may look not only to the language used but also to its historical background, its subject matter, and the purposes and objects to be accomplished." *DePriest*, 798 So. 2d at 458 (quotation marks and citation omitted).

Marlow argues that the statutory section on which BellSouth relies cannot be understood without considering the two immediately preceding sections of the Code that were adopted at the same time. Those sections, Marlow insists,

4

No. 11-60394

provide the necessary context that reveal the limited reach of Section 77-9-715. As we will explain, these three sections were adopted together a century and a half ago and have remained largely unchanged.

We first quote the prior two sections. The first authorizes telephone companies to erect their lines along public roads and similar property:

> All companies or associations of persons incorporated or organized for the purpose of constructing telegraph or telephone lines shall be authorized to construct the same, and to set up and erect their posts and fixtures along and across any of the public highways, streets, or waters, and along and across all turnpikes, railroads, and canals, and also through any of the public lands. Such lines, posts and fixtures shall be so constructed and placed as not to be dangerous to persons or property, and as not to interfere with the common use of such roads, streets, or waters, or with the convenience of any landowner more than may be unavoidable. In case it shall be necessary to cross any highway, such lines, posts and fixtures shall be so constructed as to cross such highway at right angles.

Miss. Code Ann. § 77-9-711.

> The next section allows local officials to regulate the construction:

> The board of supervisors of any county, and the governing authorities of any city, town or village, through which any telegraph or telephone line may pass, shall have power to regulate, within their respective limits, the manner in which the same shall be constructed and maintained, with a view to the safe and convenient use of the public highways and streets. If the proprietors of any telegraph or telephone line refuse or omit to comply with such regulations, the board of supervisors, or the authorities of the city, town or village, may cause such line to be abated within its jurisdiction as a nuisance.

Miss. Code Ann. § 77-9-713.

The district court rejected Marlow's argument that these prior two sections were relevant. The court's first step was to determine whether Section 77-9-715 was ambiguous. The section itself contains no words limiting it to lines placed

on public ways. Viewing the statute in isolation, the district court held it unambiguously provided that if a telephone line were placed on land without an easement first being acquired, it could remain upon payment of damages. The court held that this clear language would be "subverted" if guidance from other statutory sections were used to alter the meaning.

The district court's refusal to consider the series of three statutes together has some plausibility. Meaning should be sought first in the language of the statute; only when it is unclear will "canons of statutory interpretation" be brought to bear. *Lutz Homes*, 19 So. 3d at 62. Where we find error is the manner in which the district court applied that principle. If each section of a lengthy enactment must be interpreted solely by determining whether the words within the watertight compartment of that single section are ambiguous, then all premises and limitations that are clear from looking at the entire enactment must be restated in every relevant subpart. That rule would create a cumbersome drafting requirement not reflective of common practice.

The *Lutz Homes* court stated the rule that the language of the statute controls, but it then quoted three different sections of the enactment involving regulation of residential builders and also referred generally to the entirety of the act. *Id.* at 62-63. Though the court never declared whether any section of the statute was ambiguous, it also never identified a principle of construction it was using to find meaning. We conclude the court implicitly determined there was no ambiguity after examining all relevant sections of the enactment.

Consistent with our conclusion that multiple-section statutes are written to be viewed together is a doctrine called the "whole-act rule." It provides that one section of an enactment is analyzed in light of the whole:

> All parts of the act should be considered, compared, and construed together. It is not permissible to rest the construction upon any one part alone, or upon isolated words, phrases, clauses, or sentences, or to give undue effect thereto. The legislative intention as collected

> from an examination of the whole as well as the separate parts of a statute, is not to be defeated by the use of particular terms, but, to the contrary, will prevail over the literal import thereof.

*Kellum v. Johnson*, 115 So. 2d 147, 150 (Miss. 1959) (quotation marks and citation omitted). More recently, the court wrote that a "disputed section should be interpreted in light of all other provisions of the Act." *State v. Beebe*, 687 So. 2d 702, 707 (Miss. 1996) (citing *Broadhead v. Monaghan,* 117 So. 2d 881, 886 (Miss. 1960) (holding that when "construing a statute the court must seek to ascertain the legislative intent from the statute as a whole, and not from a segregated portion, considered apart from the rest of the statute")).

Even if the whole-act rule is one of the canons that cannot be used until first finding ambiguity, Section 77-9-715 alone does not provide an answer to the issue before us. That Section says nothing about telephone companies having a right to construct their lines. The statute is premised on there being a right, but the breadth of the right is unstated. BellSouth perceives an implication that it may lawfully construct telephone lines without first getting an easement from the fact that telephone companies must pay damages caused by "the erection, continuance, and use" of the lines, and that upon payment "the right to continue and use such line and fixtures shall exist" as if by a license. We do not see what BellSouth sees. A statute solely about liability for damages from construction does not imply that construction can be anywhere.

A grant of a license across any particular land in the state is not found in this one section's words. Thus we follow Mississippi's direction and look at all the relevant sections from the same enactment. Sections 77-9-711 through 77-9-715 have been largely unchanged since they were first adopted in 1857. Miss. Code Ch. XXXV, arts. 45-47 (1857). The original enactment applied only to the technological marvel of that age, the telegraph. The legislature added telephone lines and companies when it adopted a new code in 1906. Miss. Code §§ 925-27

No. 11-60394

(1906).[3]  As in today's Section 77-9-711, the 1857 statute allowed companies to string lines on "posts and fixtures, along and across any of the public highways, streets, or waters of this State, and along and across all turnpikes, railroads, and canals, and also through any of the public lands."  Miss. Code Ch. XXXV, art. 45 (1857).  There was no right granted across private lands.  The next section, continued today as Section 77-9-713, empowered local officials to regulate the construction within their jurisdictions "with a view to the safe and convenient use of the public highways."  Miss. Code Ch. XXXV, art. 46 (1857).  The second section is a limitation on the first, namely, that the construction of lines which the first section authorized could be regulated by local officials.

We consider these two related provisions as we decide what the 1857 version of Section 77-9-715 meant.  The original statute began: "Such companies, or associations, shall be responsible for any damages which any person may sustain, by the erection, continuance, and use of such line, and the fixtures thereof. . . ."  Miss. Code Ch. XXXV, art. 47 (1857).  The damages which require compensation are those involving "such line."  The only possible antecedent telegraph line (and later, telephone line) to which "such line" could refer is one strung across public highways, streets, waters, and the like.  Upon "payment [of damages], the right to continue, and use such line and fixtures shall exist as if by leave and license of the owner of the land."  *Id.*  This damage section applies only to "such line," which means the statute cannot be read as a general authorization to build on private land and pay damages later.

We have already noted that the coverage of what is now Section 77-9-715 was extended to telephone companies in 1906.  That was done by changing the

---

[3] The commissioners authorized to draft a new code had authority to "submit for the consideration of the legislature such amendments, alterations and additions as they might deem pertinent to existing general legislation, and which in their judgment would make it more effective."  Whitfield, Catchings, and Hardy, Miss. Code of 1906, Preface at iii (Draft 1905). They suggested the insertions.  *Id.*, Amendments following p. 1366, at [1], 17.

first words of the section from "Telegraph companies or associations" to "Telegraph and telephone companies." *Compare* Miss. Code § 856 (1892) *with* Miss. Code Ch. 24, § 927 (1906). What is now Section 77-9-715 otherwise remained unchanged from 1857 through adoption of the 1942 Code; in 1972, "such line" was replaced with "telegraph and telephone lines," and the lengthy first sentence was broken in two. *Compare* Miss. Code Ch. 7, § 7839 (1942) *with* Miss. Code Ann. 77-9-715 (1972). No further changes have been made.

This extremely modest set of revisions supports a finding that the three statutes remain true to their original application only to public ways.

We have not yet considered a fourth statute in the current series involving telephone companies. Section 77-9-717 grants the right of eminent domain. The three sections we have been discussing have been kept together since 1857. The first Code to have eminent domain authority for telegraph companies was in 1892. Miss. Code § 858 (1892).[4] The current statute is brief:

> Telegraph and telephone companies, for the purpose of constructing new lines, are empowered to exercise the right of eminent domain, as provided in Chapter 27 of Title 11, Mississippi Code of 1972.

Miss. Code Ann. § 77-9-717. BellSouth argues that a constructive license "complements" the power of eminent domain in the following way. If the telephone company cannot reach an agreement with a landowner, then it may condemn the property. Alternatively, if a telephone company installs a line without authority, then the landowner is owed damages.

We disagree. BellSouth's interpretation would make the statutes compete, not complement. Under its theory, once the company's negotiations with a

---

[4] The 1857 enactment granted no right of eminent domain. Such authority was later given and at least twice repealed. *See So. Teleg. Co. v. Ala. Great So. R.R.*, 1 Miss. Dec. 489, 494 (1885) (1876 condemnation authority for telegraph companies repealed in 1880); *Ala. & V. Ry. Co. v. Cumberland Tel. & Teleg. Co.*, 41 So. 258, 259 (Miss. 1906) (1886 condemnation authority for telephone companies repealed in 1892).

landowner failed, it could either just construct the line and pay later, or instead file for condemnation, allow the proceedings to be completed, pay compensation, then build. Whether accidentally or intentionally done, build now without permission and pay later upon agreement or court order could displace eminent domain. There is a limited right of immediate possession available to certain holders of eminent domain authority, not including telephone companies. Miss. Code Ann. § 11-27-81. Under that scheme, there must be a complaint filed in court, an appraisal done under court order, and initial compensation filed in court before construction begins. *Id.* § 11-27-83, -85. BellSouth erroneously interprets Section 77-9-715 to give more expansive power on this subject than does any other statute to any other entity.

Eminent domain authority complements the original grant of rights, but the original grant was limited to using public ways. Our interpretation is that the later explicit grant of eminent domain authority regulated the crossing of private lands as a complement to the original grant of authority that regulated the crossing of public lands.

Beyond arguments about the language, BellSouth argues policy. It says the complement of a constructive license is needed to prevent "forfeiture of lines already laid. . . ." That appears to be incorrect under Mississippi law. If the holder of eminent domain rights lays a errant line, there may be a corrective:

> In the case before the Court, United has the power of eminent domain, and although it was a trespasser on Berry's land when it constructed its pipeline, Berry is not entitled to have the value of the pipeline added to the value of the easement in determining his damages for taking his property by eminent domain. However, Berry is entitled to maintain a separate suit for trespass against United which right was reserved to him in the final judgment [in the condemnation action]. Berry's damages for taking his property for public use in the condemnation proceedings, and his damages for the trespass by United in another action constitute the full measure of the right of Berry.

No. 11-60394

*Berry v. United Gas Pipe Line Co.,* 370 So. 2d 235, 237 (Miss. 1979). We are not holding this precedent applies but only noting its possible relevance.

BellSouth's fundamental argument is that Section 77-9-715 evinces a public policy of allowing telephone lines to remain in place once constructed, never to be torn down for the mere absence of an easement. Such a right has never previously been recognized by the state's courts. It would be even more difficult to make that argument had the three parts of the act we have discussed been subsections of the same statute. By that, we are only observing that it would then be an unavoidable fact that the damage section is ancillary to the earlier section on construction. Under the whole-act rule, though, the connection still must be recognized.

Helping confirm our understanding of Section 77-9-715 is some early caselaw explaining how the provision for damages might be used. Some public streets were built only on easements, and the adjacent land owners had title to the center of the streets. *Stowers v. Postal Telegraph-Cable Co.*, 9 So. 356 (Miss. 1891). In such a situation, the Mississippi Supreme Court held that a city could not authorize a telegraph company to erect its line without first paying compensation to the private land-owner who owned the fee. *Id.* Authority to build over the objection of the private owner "can only be secured by the exercise of the right of eminent domain, and upon due compensation being first made." *Id.* The statutes we are reviewing were not discussed in the court's brief opinion, but we conclude the holding is consistent with Section 77-9-715.

Another possible example of when damages are owed under the statute was when, during construction, a company cut timber on the adjacent land-owner's property. *Clay v. Postal Telegraph-Cable Co.*, 70 Miss. 406, 11 So. 658 (1892) (facts stated only in 70 Miss.). Nothing in the opinion suggests the line itself was on private property. The company had first obtained permission from the county to build "along the public highways," and also "to cut, trim and

11

remove any trees, limbs or other obstructions in the way of same, upon the margin or within the width of said highways." *Id*. at 406-07. The court held that the land-owner had a right to trespass damages.

In conclusion, the statute is not ambiguous. The whole act pertains to lines placed on public ways. Section 77-9-711 grants a right to build on certain public land. Section 77-9-713 involves local government in regulating the construction. Section 77-9-715 provides a remedy to landowners whose property is damaged during construction or continuation of the authorized lines. We see nothing in these provisions that grant to telephone companies any rights to place their lines on property other than those on which there already were public rights.

Accordingly, the district court erred by interpreting these statutes to allow BellSouth simply to pay compensation for its failure to acquire a valid easement.

In support of its motion for summary judgment in the district court, BellSouth raised the alternative argument that it had a prescriptive easement whose use dates from at least 1996. After resolving the Section 77-9-715 issue in BellSouth's favor, the district court did not reach BellSouth's other argument. We do not either because the issue has not been briefed. BellSouth can decide whether again to present that alternative argument on remand.

## II. *Damages*

The district court granted summary judgment denying Marlow's claim for compensatory damages. It quite logically held the constructive license concept we have just discussed also barred the need for additional compensation to Marlow beyond what was paid the prior owners in 2002. Because we have rejected the use of Section 77-9-715 to provide a license to BellSouth, that statute also is not a basis for denying damages.

The district court also denied damages based on Mississippi's prior trespass doctrine. Under that doctrine, a purchaser of land is generally

12

precluded from recovering for trespasses or property damage that occurred prior to the land's purchase unless such right to recovery has been explicitly assigned by the seller. *Flowers v. McCraw*, 792 So. 2d 339, 342 (Miss. Ct. App. 2001). It is undisputed that Marlow did not receive from the sellers an assignment of a claim for trespass. The doctrine's rationale is that "the price paid by the purchaser should reflect the [trespassed or damaged] condition of the property at the time of the purchase and [thus] no harm to the purchaser by the prior trespass would have occurred." *Id.* In these cases, the damages caused by the trespasser diminished the value of the property. Generally, though, the trespass itself has ended.

The *McCraw* case was similar to several that use this doctrine in that it was a suit for damages for the improper cutting of timber. *Id.* at 341. The timber was gone and so were the timber cutters. BellSouth presents a precedent that it argues is more analogous to the facts here. That suit involved a purchaser's challenge to the prior construction of a seawall across his predecessor's land. *Henritzy v. Harrison Cnty.*, 178 So. 322 (Miss. 1938). The defendant county's seawall remained on the plaintiff's land just as BellSouth's fixtures remain here. A statute allowed the county to publish notice describing land it wished to take along the shoreline for building the seawall; the owners had 30 days to file a claim with the county. *Id.* at 323. The landowner at the time of the condemnation and construction did not file for compensation. *Id.* at 323-24. Ten years later, the land was sold and the new owner built a structure that interfered with the rights of the county. *Id.* at 324. The bulk of the court's analysis concerned whether the statute allowing condemnation in this way was constitutional. It was. *Id.* at 324-26. The court also held that the prior trespass doctrine prevented the subsequent owner from bringing the claims the prior landowner might have had for compensation. *Id.* at 326.

One distinction between those facts and ours is that the court upheld the propriety of the taking under the unusual state statute. The county had the right to possess the property and there was no continuing trespass. The right to compensation was a temporary one that the prior owner allowed to lapse. Further, even if the prior owner had a claim, it had not been assigned to the plaintiff. Conversely, we have held that BellSouth did not gain the right to maintain its lines and fixtures on this property under Section 77-9-715.

We start at a different point than did the district court. It rejected damages after finding BellSouth had the right to maintain its lines and other fixtures. We conclude that BellSouth's rights have not yet been shown. If BellSouth is found to be a trespasser, what damages are owed? According to the district court, Marlow "has never sought any damages for any trespass prior to its ownership of the property in 2006." As to possible damages after 2006, Marlow is not entitled to damages for a hidden burden on the property at the time of purchase because we agree with the district court that Marlow was on notice of the presence of the telephone lines. Those lines could have factored into Marlow's decision on what it was willing to pay for the property. If they did not, that failure is not something about which Marlow can now complain.

We agree, then, that damages are not owed for diminished value of the property at the time of purchase. We also conclude that the prior trespass doctrine is not a relevant principle in deciding what damages would be owed if BellSouth is a continuing trespasser with fixtures on Marlow's property for which it has no right of possession. We leave the appropriate elements of damages for the district court to determine in further proceedings should BellSouth not succeed on its alternative argument for an easement.

We reverse the dismissal of Marlow's claim for compensatory damages.

*III.  Slander of Title*

Finally, the district court granted summary judgment against Marlow's claims for slander of title and punitive damages.  "One who falsely and maliciously publishes matter which brings in question or disparages the title to property, thereby causing special damage to the owner, may be held liable in a civil action for damages." *Walley v. Hunt*, 54 So. 2d 393, 396 (Miss. 1951).  The basis for Marlow's claims is that in 2010, upon learning of its defective easements, and after Marlow filed suit in state court, BellSouth obtained Helen Burkett's signature on two additional easements in an attempt to memorialize her intentions regarding the 2002 easements and improve its equitable position. The 2010 easements contained a false statement warranting that Helen Burkett was the true owner of record of the subject property (when, in fact, she had not owned it since 2006).  BellSouth acknowledges the falsity of this statement, maintaining it was a mistake and resulted from a failure to remove form language.  In granting summary judgment, the district court found there was "absolutely no evidence from which to infer that BellSouth acted with malice in obtaining the 2010 [e]asements, rather than in good faith and in reliance on the advice of counsel." We agree.

Although Marlow has shown at least one false statement in the 2010 easements, namely, that Helen Burkett presently owned the subject property, it has failed to present any evidence supporting an inference that any false statements resulted from BellSouth's acting with malice.  Rather, the execution of the 2010 easements is entirely consistent with BellSouth's strategy, prompted by advice of counsel, to improve its equitable position in the dispute over the validity of its easements by showing the omission of Helen Burkett's signature on the 2002 easements was inadvertent.  Indeed, the 2010 easements state: "This easement is to correct the inadvertent omission of the Grantor, Helen L. Burkett, on the original easement recorded . . . in the Forrest County Land

No. 11-60394

Records.  Grantor certifies that it was her intention to sign the easement her husband previously signed in February 2002 in favor of BellSouth on this same property for the same purpose."  The wisdom of BellSouth's strategy can be debated, but the strategy cannot be described as malicious.

Summary judgment against Marlow's claims for slander of title and punitive damages was appropriate.

The judgment of the district court is REVERSED in part, AFFIRMED in part, and REMANDED for further proceedings consistent with this opinion.